## BLACKWELL OIL & GAS CO. v. BERRY'S ESTATE.

No. 25272.   Oct. 26, 1937.

Rehearing Denied Dec. 21, 1937.

Wilcox & Swank, for plaintiff in error.

Walter Mathews, for defendant in error.

RILEY, J.   This is an action commenced by defendant in error, herein referred to as plaintiff, against plaintiff in error, herein referred to as defendant.

The petition contains three causes of action. The first cause of action is for damages for alleged breach of contract, whereby defendant sold plaintiff certain second-hand or used oil well casing. The second and third causes of action are for the purchase price of certain oil well supplies alleged to have been sold and delivered to defendant by plaintiff. Defendant admits the purchase of the supplies mentioned in the second and third causes of action, but claims an offset based upon an alleged balance due on certain of the casing delivered by defendant to plaintiff under the contract set up in the first cause of action. That contract is in writing as follows:

"Sold to Berry Pipe & Supply Company, Cushing, Oklahoma.

"All 12½" casing @ $1.25 per foot

"All 10" casing @ 90c per foot

"All 5 3/16" casing @ 32c per foot, except 15 joints.

"All 6 5/8" casing @ 45c per foot, except one string of Lapwell and all seamless.

"All of the above is at McDaniel and Kumber Warehouses and Cushing tract."

Plaintiff alleged that the pipe mentioned in the written contract consisted of: 2,709 feet of 12½" casing, 4,504.7 feet of 10" casing, 13,992 feet of 6 5/8" casing, and 8,734 feet of 5 3/16" casing.

Plaintiff alleged that after defendant had delivered 2,704.7 feet of the ten-inch casing under said sale contract, it breached said contract by refusing to deliver the balance of the casing, whereby plaintiff alleges he was damaged in the sum of $8,399.67, for which sum judgment was prayed.

Defendant in its answer admits the sale and admits the contract was as stated in plaintiff's petition. It also admits that plaintiff took delivery under the contract of 2,704.7 feet of ten-inch casing. It then pleaded an alleged breach of the contract by plaintiff in that plaintiff picked out and loaded the 2,704.7 feet of ten-inch casing on plaintiff's trucks and removed it from defendant's premises; that the purchase price thereof under the contract was 90c per foot, or $2,434.13, and: "that on the 19th day of November, 1929, the plaintiff paid on said account the sum of $2,177.30, leaving a balance due the defendant of $256.83; that under said agreement said pipe was sold for cash with no deductions, and the plaintiff claimed after it had removed some 10-inch pipe from the premises that part of the same was defective and refused to pay the balance of $256.83; that accordingly the defendant notified the plaintiff that it would deliver no more pipe to the plaintiff under said agreement until this balance was settled; that

the plaintiff refused to settle the balance due and thus breached said contract; that the defendant was at all times ready, able, and willing to deliver all of said pipe to the plaintiff under said memorandum of agreement, but the plaintiff refused to take the same unless it was privileged to select therefrom only the best joints thereof and to pay for the balance at $5 per ton, which was in violation of the agreement and to which this defendant refused to accede."

The answer then admitted liability to plaintiff under the second and third causes of action of plaintiff's petition in the sum of $191.73, and alleged a balance due defendant, after allowing said credit of $191.73, in the sum of $65.10, for which it prayed judgment.

Plaintiff replied by general denial of all matters in the answer inconsistent with the allegations contained in plaintiff's petition.

The cause was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $1,000, and defendant appeals.

There are 17 specifications of alleged error presented under three propositions.

Under the first proposition defendant in substance contends that the evidence shows that plaintiff first breached the contract and is therefore not entitled to recover.

There is but little controversy over the facts in this case. The evidence is not in conflict as to most of the controlling facts. In substance the evidence is that plaintiff was engaged in the business of buying and selling secondhand or used oil well supplies, including casing; that it was, as a rule, necessary to recondition such casing, and plaintiff reconditioned most of the casing which it bought before reselling same.

Defendant was engaged in the business of producing oil and gas and had on hand a large quantity of casing which had been removed after the wells ceased to produce, and which it desired to sell. Some of this was in the Tonkawa field near Blackwell, some in Kansas, and most of it was racked in defendant's yard at Blackwell.

Aaron Berry entered into negotiations for the purchase of said casing. He received from defendant's agent a list which showed the approximate amount of the different sizes of casing defendant had for sale. He went to defendant's yard and inspected the casing. Thereafter, on October 18, 1929, he met Mr. Arters, defendant's superintendent, and they came to an agreement on the sale of the casing. The contract was reduced

to writing by Mr. Berry as quoted above and was signed by Mr. Arters. While the contract itself does not specify the number of feet of casing of the several dimensions mentioned, it is agreed that the amount of casing involved was substantially that set out in plaintiff's petition.

About the time the contract was signed, possibly a few days before, plaintiff went to defendant's yard, and hauled away 2,490.4 feet of ten-inch casing. The next day he hauled away 214.3 feet of ten-inch casing.

Under date of October 24, 1929, defendant mailed plaintiff a statement for 2,490.4 feet ten-inch casing at 90 cents, in the sum of $2,241.30, indicating therein that the casing therein mentioned was received by plaintiff on October 14th.

Under date of November 4, 1929, defendant mailed plaintiff a similar statement for 214.3 feet of ten-inch casing at 90 cents, in the sum of $192.83.

Plaintiff mailed defendant a check dated November 18, 1929, in the sum of $2,177.30, with the following notation thereon:

"This check is in full settlement of account as shown hereon, acceptance by endorsement constitutes receipt in full.

"In payment of October statement of 10-inch pipe purchased."

With the check he mailed the following statement:

"Deductions for junk joints measured:—
  2 joints pitted through,
    approximately        40 feet
  2 joints cable cut
    approximately        40 "

"Total deduction of footage 80 feet  $72.00
"Junk value, $5.00 per ton,
    weight 3200 lbs, credit        8.00

                          $64.00
"Our check          2,177.30
"Your October statement."

It was over this attempted deduction that the controversy arose.

Defendant contends that under the contract the deduction of $72 for the four joints of alleged defective casing and the attempted payment therefor as "junk" at the rate of $5 per ton, was unauthorized under the contract and amounted to a breach thereof and defendant then had the right to refuse to deliver any more casing.

The check above mentioned was cashed and plaintiff was given credit therefor.

November 25, 1929, after defendant had

refused to deliver any more casing, plaintiff wrote defendant a letter wherein he stated:

"Our position has been that the prices, as contained in the purchase contract, were for usable pipe only, and that we were not to take any of the cable cut and pitted pipe, and if we did take such pipe, that we were to pay the junk value for such pipe.

"Be that as it may, and although we were certain of our position with reference to this matter, and were, and are, able, ready and willing to carry out the terms of the purchase contract and to take all the good and usable pipe and pay the contract price for it, and to take the junk pipe and pay junk prices for it, and were so willing to carry out the contract in our last conversation with your Mr. H. H. Arters, he has flatly refused to deliver it and to proceed under the contract. That was also the action of your Mr. Imel. * * *

"And in order to straighten out any of the differences which seem to have arisen between us, and to maintain the good will of your company, and to carry on the friendly relationships, which have heretofore existed between us we are willing to do anything that may seem equitable and just in carrying out this purchase contract, and if taking the pipe as it comes, pitted and cable cut included, at the prices agreed upon in the purchase contract, will accomplish that purpose and will be satisfactory to you, we will proceed and take all of the pipe as it comes and pay for it under the purchase contract, as outlined by Mr. H. H. Arters."

On November 21, 1930, about one year later, he wrote defendant calling attention to the proposal in his letter of November 25, 1929, as to his willingness to accept all casing, etc., but also stated:

"It was distinctly and mutually agreed that the cable cut and pitted pipe was not to be acceptable at prices agreed on for usable pipe. These cable cut and pitted joints were pointed out by your lease man and me, and were to enter his records accordingly. Your lease man said the same had to be measured to keep his warehouse records straight, and that the deduction would be made on payment at your office.

"In view of the above and your failure to adhere to said agreement, we feel no indebtedness to you."

At the trial plaintiff still contended for his right under the contract to cull the casing and pay the contract price for only such part thereof as could be reconditioned and used as oil well casing, and to pay for pitted and cable cut casing only at junk prices, that is, $5 per ton.

It may be observed that nothing whatever was said in the sale agreement about damaged casing, pitted, cable cut, or otherwise defective. Certainly there was no provision in the contract whereby plaintiff was authorized to take such pipe and pay for it only at the rate of $5 per ton. There was no agreement whatever to sell plaintiff casing of any kind at $5 per ton, much less to allow him to cull the pipe after it had been removed from defendant's yards at or near Blackwell and shipped to plaintiff's yard at Cushing, and without any opportunity for defendant to object to the finding of plaintiff as to certain joints of the casing. The difference in price on but four joints of casing amounted to $64. Plaintiff appears to have been attempting to take four joints of ten-inch casing which he had agreed to pay for at the rate of 90 cents per foot, or for four joints $72, and pay defendant therefor only $8. It would seem that the admitted conduct of plaintiff amounts to a breach of his contract and an attempt to arbitrarily set up a separate and distinct contract.

The question then arises whether the acts and conduct of plaintiff were such as to warrant a rescission of the contract of sale by defendant.

The general rule is that the seller may rescind the contract of sale where the buyer has committed a material breach of the contract or a material condition thereof; as where the conduct or language of the buyer was such as to evince an intention to abandon or repudiate the contract, or not to abide by the contract, or a material provision thereof, or to insist as a condition precedent to performance on terms new or different from those contained in the original contract. 55 C. J. 263.

In Johnson Forge Co. v. Leonard (Del.) 51 Atl. 305, the rule is aptly stated as follows:

"And lastly we may say that the buyer has his remedy for compensation in damages for a default, as well as the seller; and, each enjoying this right on equal terms, neither may seek special advantage to the detriment, perhaps of the other, by deliberately imposing new terms upon the contract."

Lebrecht v. Miller (Mo. App.) 192 S. W. 1050, lays down substantially the same rule.

Plaintiff in this case, by the endorsement

on the check, and the accompanying statement, clearly attempted to depart from the contract and in effect make a new and different contract by attempting to pay for part of the casing at the rate of $5 per ton instead of 90 cents per foot, as plainly provided by the contract. When the defendant received the check and statement it was clearly its right to rescind and refuse to deliver more casing. This it did and the letter of November 25th and subsequent negotiations amounted to no more than an attempt to reinstate the contract which was never consummated.

The uncontradicted evidence shows a breach of the contract by plaintiff, and a right in defendant to rescind.

The interpretation and effect of the endorsement on the check and the accompanying statement were questions of law for the court. 51 Atl. 305, supra.

The trial court should have sustained the demurrer of defendant to plaintiff's evidence.

It is unnecessary to consider other assignments of error.

The judgment is reversed and the cause is remanded for further proceedings consistent with the views herein expressed.

BAYLESS, V. C. J., and WELCH, CORN, GIBSON, HURST, and DAVISON, JJ., concur. OSBORN, C. J., and PHELPS, J., absent.