Dale HOUSER and Floyd Houser, Plaintiffs in Error,

v.

Frank I. SHEEHAN, Executor of the Estate of Etta M. Houser, Deceased, and Frank I. Sheehan and Glen Sheehan, Individually and as sole and only heirs of Etta M. Houser, Deceased, Defendants in Error.

No. 40252.

Supreme Court of Oklahoma.

Jan. 28, 1964.

Hudson & Hamilton, Oklahoma City, for plaintiffs in error.

E. P. Ledbetter, Oklahoma City, for defendants in error.

DAVISON, Justice.

This is an appeal by Dale Houser and Floyd Houser (plaintiffs below) from an adverse judgment in favor of Frank I. Sheehan, Executor of the Estate of Etta M. Houser, deceased, and Frank I. Sheehan and Glen Sheehan, individually (defendants below) denying plaintiff's action for specific performance of an alleged oral agreement.

The relationship of the parties is that Etta M. Houser, formerly Sheehan, and one J. A. Houser were married to each other in the late years of their lives; that Dale Houser and Floyd Houser are the sons of J. A. Houser by a former marriage; and that Frank I. Sheehan and Glen Sheehan are the sons of Etta M. Houser by her earlier marriage. The record reflects that all of said sons were adults at the time of the marriage. The parties will be referred to as they appeared in the trial court or by name.

Plaintiffs' petition alleged that shortly after the marriage and about the time of acquiring a home grocery in Anadarko, Oklahoma, in August, 1947, J. A. and Etta Houser orally agreed that all property jointly acquired by them would be held as joint tenants, and that upon the death of the survivor all property that was left would be divided equally between the four sons; that J. A. Houser died April 12, 1960, whereby title to such property vested in Etta Houser, who died May 17, 1960, without making proper provision for the agreed di-

vision of said property; and that the title to the property will descend to Frank I. Sheehan and Glen Sheehan to the exclusion of plaintiffs in violation of the above trust agreement. Defendants' answer denied the agreement and further alleged that plaintiffs were estopped to claim any benefits under the alleged agreement. The trial court denied any relief to plaintiffs and they have appealed to this court.

Plaintiffs contend that the adverse judgment is contrary to the evidence and the applicable law.

The evidence reflects that J. A. Houser and Etta Sheehan were married May 20, 1947, and resided in Guthrie, Oklahoma. At that time Etta owned some mineral interests, of doubtful value, and an interest in 5 acres of land, all in Payne County, which she had inherited from her prior deceased husband, and was working as a practical nurse. J. A. Houser owned no real estate and was a school teacher. In August, 1947, they bought a grocery store in Anadarko, Oklahoma, for $5000 and both worked in the store. The evidence and the inferences to be drawn therefrom are not definite as to their respective financial resources at the time of marriage, but it appears certain that those of Etta considerably exceeded the finances of J. A. Houser and that they combined practically all of their funds in the purchase of the grocery. The business prospered and in November, 1950, they opened a savings account in a Savings and Loan Association in their joint names and in October, 1955, most of the accumulated savings were converted by J. A. Houser to a $10,000 Investment Account in his name alone. There is no evidence that Etta had any knowledge of this action by J. A. Houser. In 1958 J. A. Houser and Etta Houser sold the grocery and moved to Norman, Oklahoma, and bought several real estate properties. Their combined assets totaled about $30,000.

On May 19, 1959, J. A. Houser wrote his own will disposing of the $10,000 Investment Account, one-half to Etta and one-half to plaintiffs, and on April 12, 1960, he died. Etta died May 17, 1960, leaving a will dated November 10, 1948, devising $25 to J. A. Houser and leaving the mineral and real estate interests that she owned at the time of her marriage to her sons, Frank I. Sheehan and Glen Sheehan. Neither will had a residuary clause provision. Each will named a son of the testator as executor. The will of J. A. Houser was probated and the fund was distributed according to its terms.

The evidence of both sides of the controversy established that J. A. and Etta Houser did have an agreement to hold their jointly accumulated assets as joint tenants and that at the death of the survivor all the property that was left was to be divided equally among the four sons. Defendants do not dispute this. Plaintiffs urge that the acts of J. A. Houser in transferring the $10,000 Investment Account to his name alone and in executing his will were not prejudicial to defendants since under the circumstances the funds, in practical effect, accrue to the sons equally. Defendants contend the acts of J. A. Houser were a breach of the agreement sufficient to nullify the agreement and further that the plaintiffs, in accepting the distribution of funds resulting from the breach, are estopped to urge specific performance. The evidence shows that Etta was not aware of the transfer of the $10,000 account into J. A. Houser's name alone or of the disposition made in his will until shortly after his death when the will was opened and read in an attorney's office. There is some testimony on behalf of plaintiffs that Etta intimated that she intended to abide by the agreement and to execute a will to that effect. Plaintiffs contend her unexpected death a short time later prevented this. The fact remains that Etta did not take the necessary action to effectuate this intention, if, in fact, she proposed to do so. On the other hand there is positive testimony on behalf of defendants that Etta considered the agreement breached and that she was not bound by it and that she stated she would make a will leaving everything to her sons. She died before this was accomplished.

It was contemplated under the agreement of J. A. and Etta Houser that the survivor would have the use and benefit of all of the jointly accumulated property until his or her death. Except for the untimely death of Etta this could have been for many years during sickness, disability, or health until her final death. Nor do we find in the record any evidence or agreement that the acts of J. A. Houser were to insure to him what he individually possessed prior to the marriage, since his financial contribution to the initial joint enterprise was considerably less than that of Etta, or, in view of the small value of Etta's prior mineral and property interests, that he was to be placed on a par with Etta in that respect.

■ In view of these considerations and from our careful examination of the record we are of the opinion that the acts of J. A. Houser constituted a material breach of the agreement.

In Miller v. Young, 197 Okl. 503, 172 P. 2d 994, we stated:

"It is a general rule of law that a contract must be performed according to the terms of the agreement before a party can have any right of action."

In Davis v. Gwaltney, Okl., 291 P.2d 820, this court said:

"A partial failure of performance is grounds for the rescission of a contract, when such failure defeats the object of the contract, or when it concerns a matter of such importance that the contract would not have been made if default in that particular had been expected or contemplated."

The record reflects that plaintiffs knew of the agreement between J. A. and Etta Houser relative to their property and its ultimate disposition for a period of years prior to J. A. Houser's death. Plaintiffs exhibited and expressed their intention to probate and take under their father's will when it was opened and read in their attorney's office in the presence of Etta and showed acquiescence in his breach of the

agreement when, after the death of Etta, they accepted their distributive portion of the Investment Account in the final distribution of his estate. The plaintiffs are in privity with J. A. Houser.

■ In Appleman v. Pepis, 117 Okl. 199, 246 P. 225, we held that a rescission of a contract results from an election by one party to rescind where the other party is estopped by his own conduct to assert the contrary.

In Oklahoma City v. Wells, 185 Okl. 369, 91 P.2d 1077, 123 A.L.R. 662, we said that estoppel by acquiescence is founded on knowledge and assent.

And in 19 Am.Jur., Estoppel, Sec. 50, it is stated:

"Generally speaking, a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts and another will be prejudiced by his action. * * *"

See also Magnolia Petroleum Co. v. Ouart, 200 Okl. 258, 192 P.2d 698, for a similar statement relative to inconsistent positions in legal actions.

■ It is our conclusion that plaintiffs are estopped to insist on specific performance of the agreement.

■ Specific performance is a matter of equitable cognizance and in Bowen v. Freeark, Okl., 370 P.2d 546, we stated:

"Specific performance of a contract is not a matter of right, but a question of equity, and the application is addressed to the sound legal discretion of the trial court and controlled by the principles of equity in full consideration of the circumstances in each case."

The judgment of the trial court is not against the clear weight of the evidence or contrary to law.

Affirmed.