1998 OK 113

**POLYMER FABRICATING, INC., an Oklahoma corporation, Plaintiff/Appellee,**

v.

**THE EMPLOYERS WORKERS' COMPENSATION ASSOCIATION, an Unincorporated Group Self–Insurance Association, Defendant/Appellant.**

No. 89,585.

Supreme Court of Oklahoma.

Nov. 24, 1998.

Rehearing Denied July 8, 1999.

Richard A. Shallcross, Brewster, Shall-cross & De Angelis, Tulsa, for Appellant

Bradley Brickell, Ted Ross, Mahaffey & Gore, Oklahoma City, for Appellee

OPALA, J.

¶1 The dispositive issue tendered is whether summary judgment for the plaintiff was erroneously entered. That judgment rests on the trial court's view that the agreement in contest is an unregistered security. We answer in the affirmative.

I

**THE ANATOMY OF LITIGATION**

¶2 The appellant, The Employers Workers' Compensation Association [TEWCA], is an unincorporated self-insurance association organized under §§ 61 and 149.1 of the Oklahoma Workers' Compensation Act,[1] and in accordance with Rule 3 of the Rules of the Administrator of the Oklahoma Workers' Compensation Court [WCC administrator rules or the Rules].[2] TEWCA, formed in

1. 85 O.S.Supp.1994 § 61; 85 O.S.Supp.1996 § 149.1.

2. Rule 3, Rules of the Administrator of the Workers' Compensation Court, regulates group self-insurance associations in accordance with the statutory mandate (amended eff. Jan. 1, 1990). *See A–Plus Janitorial & Carpet Cleaning v. The Employers' Workers' Compensation Association,* 1997 OK 37, 936 P.2d 916, 923 n. 13.

1986, is comprised of employers who have united to pool their workers' compensation liability. The appellee, Polymer Fabricating, Inc. [Polymer], an Oklahoma corporation, was a member of TEWCA beginning 3 April 1987 and ending 9 April 1993. As a condition of membership in TEWCA and as required by Rule 3 § 13 of the Rules[3], Polymer signed an "Application and Agreement for Membership in TEWCA" [the Agreement]. Paragraph 3 of the Agreement states that:

> Each and every Member jointly and severally agrees to assume, pay and discharge all liabilities under the Act of any and all Members of the Association, except for those liabilities that are specifically excluded by this Agreement, and each Member agrees to pay any assessments as may be required by the Board.

¶ 3 The totality of premiums collected from TEWCA members was less than the amount of liabilities for the period from 1989 until Polymer's membership ended in 1993. In 1992, 1994 and 1995, TEWCA made deficit assessments for the time running from 1989 through 1994. Polymer's pro rata share of these assessments is alleged to be $35,943.07.

¶ 4 Polymer, who declined to pay any of the deficit assessments, brought this action for declaratory relief. It urges the Agreement is unenforceable as void. According to Polymer, (a) TEWCA had failed to follow the TEWCA Bylaws and to maintain a "common membership" in accordance with the Rules and (b) the Agreement constitutes an unregistered security.

¶ 5 TEWCA, which urges the deficit assessments are collectible under paragraph 3 of the Agreement, counterclaimed (a) for damages from the contract's breach by non-payment, (b) for the balance due on "an open account" and *in the alternative* (c) for damages arising from breach of a quasicontractual obligation. Both parties moved for summary judgment.

¶ 6 The trial court granted Polymer's and overruled TEWCA's quest for summary relief. We retain this appeal for disposition and now reverse the trial court's judgment.

## II

### STANDARD OF REVIEW FOR SUMMARY ADJUDICATION PROCESS

¶ 7 The focus in summary process is not on the facts which might be proven at trial (*i.e.,* the legal sufficiency of evidence that could be adduced), but rather on whether the tendered material in the record reveals only undisputed material facts supporting but a single inference that favors the movant's quest for relief.[4] Summary process—a special pretrial procedural track to be conducted with the aid of acceptable probative substitutes[5]—is a search for undisputed material facts that, *sans* forensic combat, may be applied in the judicial decision-making process. It is a method for identifying and isolating non-triable fact issues, not a device for defeating the opponent's right to trial by jury. Only those evidentiary materials which eliminate from trial some or all fact issues may afford legitimate support for nisi prius resort to summary process.

---

**3.** The pertinent terms of Rule 3 § 13 (Administration and Servicing of Association) are:

"Any individual, partnership, or corporation desiring to engage in the business of servicing an approved workers' compensation group self-insurance association shall make application to the court prior to entering into a contract with the association, . . . ."

**4.** *Hulsey v. Mid–America Preferred Ins. Co.,* 1989 OK 107, 777 P.2d 932, 936 n. 15. An order that grants summary relief, in whole or in part, disposes solely of law questions. It is hence reviewable *de novo.* An appellate court claims for itself plenary, independent and nondeferential authority to re-examine a trial court's legal rulings. *Kluver v. Weatherford Hospital Auth.,* 1993 OK 85, 859 P.2d 1081, 1084. Oklahoma's summary adjudication process is similar to that followed by the federal judicial system. *See Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

**5.** " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Gray v. Holman,* 1995 OK 118, 909 P.2d 776, 781 n. 16 (quoting from *Seitsinger v. Dockum Pontiac Inc.,* 1995 OK 29, 894 P.2d 1077, 1080–81); *Davis v. Leitner,* 1989 OK 146, 782 P.2d 924, 926–927.

¶ 8 The issues stand before us for *de novo* examination.[6]  In reviewing any order of summary adjudication, the court may consider, in addition to the pleadings, such items as depositions, affidavits, admissions, answers to interrogatories, and other evidentiary materials submitted by the parties, which are in an acceptable form.  All facts and inferences must be viewed in the light most favorable to the non-movant.  Only if the court should conclude that there is no substantial controversy over any material facts is the movant entitled to summary judgment to be rested on the applicable law.[7]

## III

## POLYMER'S ARGUMENTS

¶ 9 Polymer argues that (a) the terms of 85 O.S.Supp.1996 § 149.1(C)[8] were not in effect when this cause of action commenced, (b) legislation is presumed to apply prospectively only[9] and (c) the Legislature intended subsection C to apply only to associations that were formed (and to members of existing associations who joined) *after* the amendment's effective date.  The amendment is unconstitutional, Polymer argues, if it may be applied retroactively to agreements like that entered between Polymer and TEWCA.

¶ 10 Polymer also claims the Agreement is void because TEWCA failed to notify it of annual membership meetings and of Board elections.  Because TEWCA breached the Agreement, Polymer urges that it should be able to sue for its losses *ex contractu.*

¶ 11 Polymer suggests that TEWCA members *impermissibly* engaged in *dissimilar business* activities which range from healthcare management to car dealerships.  The

6.  *Brown v. Nicholson,* 1997 OK 32, 935 P.2d 319, 321.  Issues of law are reviewable by a *de novo* standard.  An appellate court claims for itself plenary, independent and non-deferential authority *to re-examine a trial court's legal rulings.  See Kluver v. Weatherford Hosp. Authority,* 1993 OK 85, 859 P.2d 1081, 1083.

7.  *Hargrave v. Canadian Valley Elec. Coop., Inc.,* 1990 OK 43, 792 P.2d 50, 55.

8.  The terms of 85 O.S. Supp.1996 § 149.1(C) (eff.  November 1, 1996) are:
    "C.  *A group self-insurer created pursuant to this section either prior to or after the effective*

divergent enterprises did not represent insurance risks similar to those of Polymer's business of manufacturing cooling tower components.  It is argued that (a) the statutory phrase "common purpose" requires that employers in a self-insured association all be engaged in business activities with similar coverage risks and (b) the TEWCA-formed unit of diverse enterprises does not qualify as a statutorily-sanctioned risk grouping.

## IV

## TEWCA'S ARGUMENTS

¶ 12 TEWCA urges that the 1996 amendment[10] did not substantively change preexisting law but rather clarified it.  According to TEWCA, subsection C explains that a membership in self-insurance associations *is not* and *never has been* deemed a "security" subject to registration under Oklahoma Securities Act.[11]

¶ 13 TEWCA admits that during Polymer's membership period the Board did not regularly conduct formal meetings.  Its failure to have membership meetings, TEWCA maintains, is merely a technical departure but not a material breach of its contract with Polymer.

¶ 14 According to TEWCA, its membership grouping, although diverse, did indeed have a "recognizable common purpose" for associating—one to lower the individual member's workers' compensation coverage expense through a group self-insurance association.

## V

## THE PROVISIONS OF THE 1996 AMENDMENT ARE RETRO- ACTIVE IN FORCE

*date of this act shall not be subject to the provisions of the Oklahoma Securities Act."* (Emphasis supplied).

9.  For this notion Polymer relies on *Texas County Irr. & Water Resources Ass'n. v. Oklahoma Water Resources Bd.,* 1990 OK 121, 803 P.2d 1119, 1122.

10.  For the provisions of 85 O.S. Supp.1996 § 149.1(C), see *supra* note 8.

11.  71 O.S.1991 §§ 1 et seq.

¶ 15 Subsection C,[12] which was added to § 149.1 of the Workers' Compensation Act [13] in 1996, provides that group self-insurers are not subject to the Oklahoma Securities Act.[14] Both *Self Insurers' Management Group v. YWCA of Oklahoma City,*[15] and its companion case, *Oklahoma Employers Safety Group, S.I.A. v. Colbert Nursing Home, Inc.,*[16] teach that because the original text of § 149.1 was ambiguous, its 1996 amendment constitutes a clarifying enactment which has retrospective effect. In these cases the court reasoned that (a) by enacting § 149.1 the Legislature intended to authorize security for workers' compensation benefits to be provided for employees who are engaged by members of group self-insurance associations and (b) that this declared public policy underwent clarification in subsection C (the *added subsection* that excludes the authorized associations from the purview of the Oklahoma Securities Act).[17] *Where an earlier legislative enactment is unclear in some respect and a later enactment attempts to remove the ambiguity, the amendatory statute constitutes a clarifying enactment* [18] *that is to be given retrospective force.*[19]

¶ 16 Following, as we must, the teachings of *Self Insurers'* [20] and of *Oklahoma Employers,*[21] we hold today that the Oklahoma Securities Act [22] does not govern the Agreement between TEWCA and Polymer. The Legislature's after-enacted subsection C takes group self-insurance contracts out of the purview of that act.

## VI

## BY FAILING TO FOLLOW ITS BY-LAWS, TEWCA DID NOT MATERIALLY BREACH THE AGREEMENT

¶ 17 TEWCA By-laws stipulate that TEWCA will hold annual membership meetings at which, on any matter presented, each member is entitled to one vote.[23] During the annual meeting, the members are to elect the

12. *See supra* note 8.

13. 85 O.S.1991 § 149.1.

14. For the provisions of the Oklahoma Securities Act see 71 O.S.1991 §§ 1 et seq.

15. *Self Insurers' Management Group v. YWCA of Oklahoma City,* 1997 OK 95, 954 P.2d 115, 118–119, *cert. denied, YWCA of Oklahoma City v. Self Insurers' Management Group,* —— U.S. ——, 119 S.Ct. 63, 142 L.Ed.2d 49 (1998).

16. *Oklahoma Employers Safety Group, S.I.A. v. Colbert Nursing Home, Inc.,* 1997 OK 94, 954 P.2d 120, 124, *cert. denied, YWCA of Oklahoma City v. Self Insurers' Management Group,* —— U.S. ——, 119 S.Ct. 63, 142 L.Ed.2d 49 (1998).

17. *Self Insurers', supra* note 15 at 118.

18. A *clarifying amendment* is one that explains ambiguous law in order to remove doubt concerning the legislative intent in the original text. *Magnolia Pipe Line Company v. Oklahoma Tax Commission,* 196 Okl. 633, 167 P.2d 884, 888 (1946). By amending a statute the legislature may have intended (a) to change existing law or (b) to clarify ambiguous law. Its precise intent is ascertained by looking to the circumstances that surround the change. If the earlier statute definitely expressed an intent or had been judicially interpreted, the Legislature's amendment is presumed to have changed an existing law, but if the meaning of the earlier statute was in doubt, or where uncertainty as to the law's meaning did exist, *a presumption arises that the amendment was designed to more clearly express the legislative intent that was left indefinite by the earlier text. Id.* at 887.

19. For the authorities that introduce this canon of statutory construction into Oklahoma jurisprudence, see *Self Insurers', supra* note 15 at 118; *Oklahoma Employers', supra* note 16 at 124; *Magnolia, supra* note 18 at 888; *Letteer v. Conservancy District No. 30,* 1963 OK 218, 385 P.2d 796, 801 (where the court holds that subsequent legislation may be considered as an aid in construing prior enactments upon the same subject, which were not free of ambiguity or doubt); *Texas County Irr., supra* note 9 at 1122. In *Texas County,* the pre–1988 version of the statute in contest there appeared ambiguous because it did not expressly indicate whether a MAY (maximum annual yield) determination was to emanate from the rulemaking process or from an individual proceeding. *The court viewed the original section's ambiguity as raising a presumption that the 1988 amendment was designed to clarify the earlier text's language, rather than to change the statute's provisions.* Because the court concluded that the amendment had a clarifying effect, it held that it was binding retroactively. *Id.* at 1122.

20. *Supra* note 15.

21. *Supra* note 16.

22. *See supra* note 14.

23. TEWCA By-laws art. V § 1.

Members' Supervisory Board [the Board].[24] The Board supervises the business and manages the property of TEWCA. During Polymer's six years of membership, TEWCA sent it notice of only one "special meeting". There is no proof in the record that TEWCA ever notified Polymer of any annual meetings.

¶ 18 The authorities invoked by Polymer to escape liability are factually distinguishable.[25] In the cited cases the plaintiff had *materially breached* the agreement upon which it sued. According to some of these decisions,[26] a breach may be the basis for a contract's rescission when it (a) *defeats* the object of the contract or (b) *concerns* a matter of such importance that the contract would not have been made if default in that particular had been expected. Generally, where one party contends that it is relieved of performing its own contractual obligation by the breach of the other party, *the controlling issue is whether the breach invoked as a basis for relief is material.*[27]

¶ 19 There is no showing in this case that (a) TEWCA's failure either *to notify* Polymer of annual meetings or *to hold* annual elections detrimentally affected Polymer and (b) Polymer ever inquired about the annual meetings or demonstrated any concern about elections to the supervisory board. *Oklahoma Employers*[28] teaches that the failure of a group self-insurance association's membership to elect a supervisory board is not a material breach for which recovery may be available or which will defeat imposition of liability for delinquent assessments.

¶ 20 We hence hold there is here no legal support for summary judgment to Polymer on the ground that TEWCA materially breached its Agreement.

## VII

### THE TRIAL COURT ERRED IN HOLDING THAT THE RULES OF THE ADMINISTRATOR OF THE WORKERS' COMPENSATION COURT PROHIBIT DISSIMILAR BUSINESSES FROM JOINING A GROUP SELF–INSURANCE ASSOCIATION

¶ 21 Rule 3 § 3(b) (of the WCC administrator rules) requires that members of group self-insurance associations have a common interest or purpose for associating.[29] This court held in *Self Insurers'*[30] that the standard prescribed by Rule 3 § 3(d)[31] is broad enough to encompass those members who joined because they were willing to assume the risk of a self-insurance group in return for the opportunity to enjoy lower premiums for workers' compensation coverage. One's election to join a collective risk pool constitutes a legitimate common interest within the meaning of Rule 3 § 3. Moreover,

---

24. TEWCA By-laws art. IV § 1.

25. Polymer relies on *Houser v. Sheehan*, 1964 OK 13, 389 P.2d 94, 97; *Stoltz, Wagner & Brown v. Cimarron Exploration Co.*, 564 F.Supp. 840, 850 (W.D.Okl.1981)(citing *Houser, supra* at 850).

26. *See Stoltz, supra* note 25 at 849; *Houser, supra* note 25 at 97.

27. *Lewis v. Farmers Insurance Company*, 1983 OK 100, 681 P.2d 67, 69; *Dean Harr & Company v. Kuhlman*, 1954 OK 308, 277 P.2d 153, 156; *Blackwell Oil & Gas Co. v. Berry's Estate*, 181 Okl. 459, 74 P.2d 373, 376 (1937). *See also* John Calamari & Joseph Perillo, Contracts §§ 11–11 through 11–18 (3d ed.1987).

28. *Oklahoma Employers', supra* note 16 at 124.

29. The terms of Rule 3 § 3(b) (Definitions), WCC administrator rules, state:
"(b) 'Group Self–Insurance Association' or 'Association' means an association organized by two or more employers having a common interest which have entered into agreements to pool their liabilities under the Oklahoma Workers' Compensation Act."
The pertinent terms of Rule 3 § 4 (Application for Approval as a Group Self–Insurance Association: Requirements, Approval, and Review), WCC administrator rules, are:
"Two or more employers having a common interest, as defined in Section 3, may be approved by the Court as a group self-insurance association for the purpose of entering into agreements to pool their liabilities under the Act. * * *"

30. *Self Insurers', supra* note 15 at 119.

31. The pertinent terms of Rule 3 § 3(d) (Definitions), WCC administrator rules, are:
" 'Common interest' means employers engaged in the same or similar types of business or who otherwise have a recognizable common purpose for associating...."

**116**

this court noted that the Workers' Compensation Court conducts a yearly review of group self-insurance associations to ensure their compliance with regulations. In *Self Insurers*,[32] as in the case before us, there is no record proof that the diverse membership in TEWCA was ever condemned by the Workers' Compensation Court (or its administrator) as one in breach of any regulation.

¶ 22 We hence hold that TEWCA's membership *was not inappropriately configured* either under the statutes or under the WCC administrator rules.

## VIII

### SUMMARY

¶ 23 The 1996 amendment to § 149.1 constitutes but *a clarification* of the legislative will that the provisions of the Oklahoma Securities Act[33] shall not govern group self-insurance associations. TEWCA's failure annually to hold meetings and to elect a supervisory board affords Polymer no actionable basis (a) for *ex contractu* damages or (b) to defeat TEWCA's claim for recovery of additional premium assessments. Polymer's attempt to interpose impermissible risk diversity among member enterprises as a liability-defeating defense to TEWCA's claim also must fail. The record does not indicate the presence of a configuration of businesses that offends the Rule 3 § 3 standards.

¶ 24 Subsection C, which must be given retroactive sweep, was in force when this cause was under consideration at nisi prius. Because the trial court refused to apply the critical subsection to the Agreement in contest here, we direct that in post-remand proceedings the after-enacted legislation be given retroactive force. No less is required by our teachings in *Self Insurers' Management Group v. YWCA of Oklahoma City* [34] as well as in *Oklahoma Employers Safety Group S.I.A. v. Colbert Nursing Home, Inc.*[35]

¶ 25 The trial court's summary judgment rests on flawed legal conclusions. It is accordingly reversed and the cause remanded for further proceedings to be consistent with today's pronouncement.

¶ 26 KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE and WATT, JJ., concur.

¶ 27 ALMA WILSON, J., concurs in part and dissents in part.

---

32. *Self Insurers', supra* note 15.

33. 71 O.S.1991 §§ 1 et seq.

34. *Self Insurers', supra* note 15 at 119.

35. *Oklahoma Employers', supra* note 16 at 124.