2001 OK 71

**Larry SAMMAN, Petitioner,**

v.

**MULTIPLE INJURY TRUST FUND,
and The Workers' Compensation
Court, Respondents.**

No. 94,807.

Supreme Court of Oklahoma.

Sept. 18, 2001.

Philip D. Ryan of Boettcher, Ryan & Martin, Oklahoma City, OK, for the petitioner.

Georgiana Peterson and Gregory J. Crawford of Pray, Walker, Jackman, Williamson & Marlar, Oklahoma City, OK, for the Multiple Injury Trust Fund.

LAVENDER, J.

¶1 To resolve today's cause the Court must ascertain whether the trial judge in her October 10, 1996 order which established liability against respondent, the Special Indemnity Fund [now the Multiple Injury Trust Fund (Fund)], exceeded the Workers' Compensation Court's [WCC] jurisdiction because her order provided that permanent total disability [PTD] payments due Larry Samman [claimant or Samman] would accrue from the order's filing date rather than the date the employer concluded making permanent partial disability [PPD] payments to the claimant. We hold the trial judge was correct when (by a May 26, 2000 order) she decided the October 1996 order—to the extent that it expanded the Fund's liability for PTD—was facially void under the terms of *85 O.S.1991 § 172*[1] and the criteria enunciated in *Stidham v. Special Indemnity Fund,* 2000 OK 33, ¶7, 10 P.3d 880, 883–884. We also hold the May 2000 WCC order should not have been vacated by the Court of Civil Appeals [COCA].

**I**

**FACTS AND PROCEDURAL HISTORY**

¶2 The parties do not contest that as of April 25, 1990 Samman had suffered 28.90%

PPD to the body as a whole as a result of an on-the-job injury. When he suffered a later work-related injury in August 1992 while apparently working for another employer, claimant by virtue of his previous work-related injury was a "physically-impaired person" under the provisions of the Special Indemnity Fund Act.[2] It is also uncontested that by reason of his 1992 injury Samman sustained 60.8% PPD. In response to the second injury the WCC (on September 25, 1995) awarded Samman 312 weeks of PPD at a rate of $185.00 per week, payable by the second employer or its insurer.

¶3 On October 10, 1996 the WCC determined that as a consequence of the two injuries Samman is permanently and totally disabled. The October 1996 order awarded him PTD of $185.00 per week for five years or until he reached the age of sixty-five (65) years whichever is longer. The order further provides:

"THAT *beginning with the date of filing of this Order,* respondent [Fund] is ordered to pay compensation to claimant at the rate of $185.00 per week as stated in the above paragraph (less attorney fee)." [Emphasis added.]

It is what legal effect should be accorded the italicized language which is at the heart of today's appeal.

¶4 In 2000 Samman sought to have Fund pay him (in a lump sum) an amount equal to the ordered PTD rate times the number of weeks for which his second employer paid him PPD after the October 10, 1996 order's filing. This sum, he argued, was to be in addition to, and not in diminution of, the weekly payments which he was to receive for PTD after his second employer made its final PPD payment. Samman reasoned that he was entitled to the accrued lump sum under the terms of *85 O.S.Supp.1999 § 172* (B).[3]

---

1. See *infra* page for the relevant terms of *85 O.S.1991 § 172.*

2. 85 O.S.1991 § 171 *et seq.,* as amended.

3. The relevant provisions of *85 O.S.Supp.1999 § 172* (B) are:

"In permanent total disability cases the same shall be paid in *periodic* payments, as set forth in Section 22 of this title, and *shall not be commuted to a lump-sum payment.* The compensation rate for permanent total awards from the Multiple Injury Trust Fund shall be the compensation rate for permanent partial

Neither party disputes that the Fund is statutorily precluded from making PTD payments until after Samman's last employer makes its final PPD payment.

¶ 5 The WCC, in its May 2000 order, rejected claimant's argument(s) and found that the October 1996 order was facially void to the extent it (a) required accrual of PTD payments *from its filing date* to the date when the second employer or its insurer concluded making PPD payments and (b) could be construed to mandate a lump-sum payment of the same. Samman appealed.

¶ 6 The COCA vacated the WCC's May 2000 order. In so doing it held: (1) *85 O.S.Supp.1999 § 172* (B) authorizes accrual of PTD payments from the time a claimant is adjudicated totally disabled until the final PPD payment is received from the last employer; (2) the 1999 amended version of § 172, rather than changing *85 O.S.1991 § 172* (B)(the effective provision on the date of Samman's August 1992 injury), merely clarifies earlier law and hence should be retroactively applied; and (3) that the accrued amount is due claimant immediately after the final PPD payment by the second employer or its insurer.

¶ 7 Fund then sought certiorari which was granted.

## II

### STANDARD OF REVIEW

 ¶ 8 In the instant cause the Court is called upon to assess whether the WCC's jurisdiction was properly invoked to determine if the October 1996 order's terms comported with then applicable statutory standards or were facially void. Today's case involves the WCC's jurisdictional boundaries when it considers the Fund's liability to a claimant and, necessarily, implicates statutory interpretation because the Fund's liability is legislatively set. The standard of review employed when jurisdiction is in question was succinctly stated in *Stidham, supra,* as follows: "[o]nce an issue is identified as jurisdictional, it calls for a *de novo* review."[4] Statutory interpretation, involving a question of law, also demands a *de novo* review standard.[5] This Court has plenary, independent and non-deferential authority to examine a trial court's legal rulings.[6]

## III

### THE TRIAL COURT'S OCTOBER 10, 1996 ORDER IS FACIALLY VOID INSOFAR AS IT EXPANDS THE FUND'S LIABILITY TO PAY PTD BEYOND WHAT WAS STATUTORILY MANDATED AT THE TIME OF THE CLAIMANT'S LAST COMPENSABLE INJURY

 ¶ 9 Samman—by way of a March 8, 2000 Form 13—sought an order requiring Fund to pay him an amount equal to $185.00 (his weekly PTD rate) times the number of weeks which had elapsed between October 10, 1996 and February 2000 (the month dur-

---

disability paid by the employer in the last combinable compensable injury. Permanent total awards from the Multiple Injury Trust Fund shall be payable for a period of five (5) years or until the employee reaches sixty-five (65) years of age, whichever period is the longer. *Multiple Injury Trust Fund awards shall accrue from the file date of the court order finding the claimant to be permanently and totally disabled."* [Emphasis added.]

4. *Stidham v. Special Indemnity Fund,* 2000 OK 33, ¶ 10, 10 P.3d 880, 885. In *Stidham* at 2000 OK 33, ¶ 11, 10 P.3d at 886, the Court also observed:

"The sweep of powers assigned to the Workers' Compensation Court tracks precisely the perimeter drawn by legislatively established boundaries for the [Special Indemnity] Fund's obligation, *leaving the trial tribunal with no*

*excess authority.* In short, judicial power over the Fund's obligation extends no farther than the very boundary of the Fund's statute-imposed liability." [Emphasis added.]

5. *Arrow Tool & Gauge v.Mead,* 2000 OK 86, ¶ 6, 16 P.3d 1120, 1122–23. *See also Baptist Medical Center v. Pruett,* 1999 OK CIV APP 39, ¶ 11, 978 P.2d 1005, 1008, where it was held:

"Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling."

and *Tibbetts v. Sight 'N Sound Appliance Centers, Inc.,* 2000 OK CIV APP 47, ¶ 6, 6 P.3d 1064, 1066.

6. *Neil Acquisition L.L.C. v. Wingrod Investment Corp.,* 1996 OK 125, 932 P.2d 1100, 1103 n. 1.

ing which he received his last PPD payment from his employer). Fund made no PTD payments to him for this time period. Claimant's quest for additional monies was denied when the WCC ruled in May 2000 that the provision in its earlier order (requiring PTD payments to begin on the date the order was filed) was void as it did not comport with the Fund's statute-made liability as of the time of the claimant's last compensable injury.[7] Samman mistakenly relies upon the rule adopted in *Ferguson v. Ferguson Motor Co.*, 1988 OK 137, 766 P.2d 335, to support his position that the October 10, 1996 order was not subject to collateral attack since Fund did not timely bring an appeal from its terms. *Ferguson* holds that an erroneous finding in a WCC's order that is not detectable from the decision's four corners is safe from collateral vacatur when a timely appeal has not been sought. Here, the complained-of error is facially apparent upon an inspection of the WCC proceedings, i.e., observable in the order's enunciated terms when viewed in conjunction with the entire WCC record of the proceedings (the functional equivalent of a district-court judgment roll).

▇▇▇ ¶ 10 The *Stidham* analysis [8] is conclusive of the issue whether the WCC had jurisdiction to enter its May 2000 order which ruled the earlier (October 1996) order was facially void to the extent that it provided that PTD payments were *to begin upon the memorial's filing.* The pertinent terms of *85 O.S.1991 § 172*—which (a) were the effective law at the time of Samman's last compensable injury and (b) address the Fund's liability when separate, multiple on-

the-job injuries result in permanent and total disability—provide as follows:

"B. The employer shall be liable only for the degree of percent of disability which would have resulted from the latter injury if there had been no preexisting impairment. *After payments by the employer or his insurance carrier have ceased, the remainder of such compensation shall be paid out of the Special Indemnity Fund ... in periodic installments.* In permanent *total* disability cases the same shall be paid in *periodic* payments ... and *shall not be commuted to a lump-sum payment."* [Emphasis added.]

This provision sets the outer limits of the Fund's liability for payment of PTD and as such represents the boundaries of the WCC's jurisdiction when it determines a claimant's entitlement to PTD and the Fund's obligation to pay the same.

▇▇▇ ¶ 11 According the above statutory language its plain and ordinary meaning [9] leads to a single, inescapable conclusion, i.e., the Fund's liability to make PTD payments can only be satisfied through *periodic installments* which *can begin only* after the employer's final PPD payment. Under the law applicable at the time of Samman's last compensable injury, a WCC order—that directs accrual of PTD payments while the last employer is making PPD payments and/or then orders a lump-sum payment of these so-called accrued PTD benefits from the Fund—is outside the WCC's jurisdiction. Hence, that provision of the WCC's October 1996 order which required the Fund's PTD payments begin with the October 10, 1996

---

7. *See Special Indemnity Fund v. Archer*, 1993 OK 14, 847 P.2d 791, 794–95, where the Court held that the law in effect at the time of a worker's later injury is to be used in fixing the Fund's liability.

8. *See supra*, note 4.

9. *See Oldham v. Drummond Bd. of Ed. of Ind. School Dist.*, 1975 OK 147, 542 P.2d 1309, 1311, where the Court held that when a statute's language is plain and unambiguous, no room exists for construction of its language.

Also, the Court understands the word "shall" as used in *85 O.S.1991 § 172* (B) to mean "must". This is so because the word "shall" is

usually given its common meaning of "must", implying a command or mandate [*See Hess v. Excise Bd. of McCurtain County*, 1985 OK 28, 698 P.2d 930, 932], subject, of course, to the obvious caveat that a different legislative intent is somehow signified by the context in which the word "shall" is used [*See State v. Hunt*, 1955 OK 125, 286 P.2d 1088, 1090–1091] or doing so was shown to be inconsistent with the overall intent of the statutory scheme under consideration. We find nothing within the statutory scheme detailing the Fund's liability that shows anything other than that Fund payments **shall** be paid out periodically only after employer/insurance carrier payments have ceased and that the Fund liability **shall not** be commuted to a lump-sum payment.

order's filing was facially void under the teaching of *Stidham, supra* and beyond the power of the WCC to enter.[10]

## IV

**BECAUSE THE 1999 AMENDMENT OF 85 O.S.1991 § 172(B) DOES NOT REPRESENT A CLARIFICATION OF EARLIER LAW AND IS NOT ACCORDED RETROSPECTIVE APPLICATION BY EXPRESS STATUTORY LANGUAGE, IT MAY NOT BE RETROACTIVELY APPLIED[11]**

■ ¶ 12 Claimant asserts in the alternative that even if it were to be found that the trial court was vested with the power to declare facially void that part of the October 10, 1996 order which allowed him to receive PTD payments from its filing date, the result which he seeks is still available under the terms of *85 O.S.Supp.1999 § 172* (B).[12] His position is that the last sentence of the 1999 amendment authorizes the accrual of PTD payments during that time when the second employer is paying PPD.

■ ¶ 13 The primary goal of statutory construction is to ascertain and follow legislative intention.[13] When the Legislature has clearly expressed its intent, the use of additional rules of construction are almost always unnecessary and a statute will be applied as written.[14] In other words, the plain meaning of a statute's language is conclusive except in the rare case when literal construction produces a result demonstrably at odds with legislative intent.[15] The Court also recognizes that by amending a statute the Legislature may have intended (1) to change existing law or (2) to clarify ambiguous law.[16] The exact intent is ascertained by looking to the circumstances surrounding the amendment.[17] If the earlier version of a statute definitely expresses a clear and unambiguous intent or has been judicially interpreted, a legislative amendment is presumed to change the existing law.[18] Nonetheless, if the earlier statute's meaning is in doubt or uncertain, a presumption arises that the amendment is designed to clarify, i.e., more clearly convey, legislative intent which was left indefinite by the earlier statute's text.[19]

¶ 14 Resolution of the issue presented by claimant's alternate argument requires the Court to examine the meaning of *85 O.S.1991 § 172* (B)[20] to determine if the relevant statutory language is susceptible of ambiguous meaning. We have previously done so in **Section III** above and have concluded that the statutory language in issue is neither unclear nor open to multiple meanings. Under the law in effect at the time of Samman's

**10.** *Stidham, supra* note 4 at 885. Approximately two (2) years before our pronouncement in *Stidham v. Special Indemnity Fund*, 2000 OK 33, 10 P.3d 880, the Court of Civil Appeals (COCA) issued an opinion in *Special Indemnity Fund v. Maples*, 1998 OK CIV APP 157, 968 P.2d 839. The *Maples* decision appears to contradict the jurisdictional ruling of *Stidham*, reiterated today. To the extent *Special Indemnity Fund v. Maples* (as to the jurisdictional issue) is contrary to the holdings of *Stidham* and our pronouncement here, that opinion is **overruled.**

**11.** Three decisions of the COCA [two from Division 1 and one from Division 2] are generally contrary to the COCA decision in the instant case. These cases hold that the 1999 amended version of § 172 does not retroactively apply when a claimant's last compensable injury occurs before the amendment's effective date. *See Multiple Injury Trust Fund v. Hill*, 2001 OK CIV APP 8, 16 P.3d 1143; *Fry v. Multiple Injury Trust Fund*, 2000 OK CIV APP 129, 16 P.3d 1132; *Spurgin v. Multiple Injury Trust Fund*, 2000 OK CIV APP 85, 10 P.3d 240.

**12.** For the relevant provisions of *85 O.S.Supp. 1999 § 172* (B), see *supra* note 3.

**13.** *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Com'n*, 1988 OK 117, 764 P.2d 172, 179.

**14.** *Bruner v. Sobel*, 1998 OK 60, ¶ 9, 961 P.2d 815, 817.

**15.** *City of Tulsa v. Public Employees Relations Board*, 1998 OK 92, ¶ 14, 967 P.2d 1214, 1220.

**16.** *Polymer Fabricating, Inc. v. Employers Workers' Compensation Association*, 1998 OK 113, ¶ 15 n. 18, 980 P.2d 109, 114.

**17.** *Id.*

**18.** See *Archer, supra* note 7 at 795 n. 5.

**19.** *Polymer Fabricating, supra* note 16 at 114.

**20.** For the statutory language in issue, see *supra* page.

last compensable injury, PTD payments were mandated to be by periodic installments, payable after PPD payments by the employer or his insurance carrier had ceased, and were not commutable to lump-sum payments.

¶ 15 *Sans* ambiguity—which today we find does *not* exist—in the 1991 version of § 172(B), the 1999 amendment of the same cannot be said to have been enacted by the Legislature to clarify the earlier law.[21] Further, a reading of the later amendment's language reveals no legislative intent to afford retrospective force to it. Under the circumstances here present the retroactive application of *85 O.S.Supp.1999 § 172* (B) is simply not sustainable.

## V

## SUMMARY

¶ 16 Claimant today seeks to impose upon Fund liability for the payment of PTD from the filing date of the order adjudicating him permanently and totally disabled. He predicates his quest on alternate theories: (1) that the WCC was without power to declare facially void that part of its earlier order which directed PTD payments begin with the order's filing or (2) that *85 O.S.Supp.1999 § 172* (B) was intended to clarify the earlier law and should be given retroactive application.

¶ 17 The WCC's October 10, 1996 order—to the extent it extended the Fund's liability for PTD payments beyond the outer limits established by the terms of *85 O.S.1991 § 172* (B)—is facially void. This result is consistent with the analysis sanctioned in *Stidham* for assessment of WCC orders which adjudicate the Fund's liability when a worker—who has suffered multiple work-related injuries with different employers—is totally disabled. The law in effect when Samman experienced his last compensable injury, i.e., *85 O.S.1991 § 172* (B),[22] clearly and unambiguously precluded Fund from making the lump-sum payment sought by the claimant today and further directed that Fund could only pay PTD in periodic installments which were not to begin until after Samman's last employer had made its final PPD payment. The enunciated statutory-limits set the outer boundaries of the WCC's jurisdiction when assessing the Fund's liability for PTD payments. As observed by the WCC in the May 26, 2000 order, it exceeded these outer-limits by directing in the October 1996 order that PTD payments were to begin with that order's filing.

¶ 18 Lastly, because we conclude the 1991 version of § 172—insofar as it sets the limits of the Fund's liability—is clear and unambiguous, the 1999 amendment of § 172(B)[23] is not entitled to retroactive application as a clarifying enactment. The Fund is liable for the payment of PTD in the amount determined by the WCC's October 10, 1996 order in periodic installments beginning in February 2000, i.e., that time when Samman's last employer or its insurer made the final PPD payment.

¶ 19 On certiorari previously granted,

¶ 20 HARGRAVE, C.J., HODGES, LAVENDER, OPALA, SUMMERS, BOUDREAU and WINCHESTER, JJ., concur.

¶ 21 KAUGER, J., concurs in part; dissents in part.

¶ 22 WATT, V.C.J., dissents.

---

21. Even if the Court were to accept that construction of the last sentence of *85 O.S.Supp.1999 § 172* (B) which is sought by the claimant today, we could not give the 1999 amendment retroactive application because the earlier (1991 version) law is clear and unambiguous.

22. For the relevant provisions of *85 O.S.1991 § 172* (B), see *supra* page 6 (¶ 10).

23. In today's pronouncement the Court neither offers an opinion on nor reaches the meaning of the language used in the last sentence of *85 O.S.Supp.1999 § 172* (B). [*See supra* note 3 for the relevant statutory language.] Nor do we address those changes in § 172(B) occasioned by its 2000 amendment; *see* 2000 Okla. Sess. Laws, Ch. 248, § 12.