2008 OK 7

**In the Matter of the 2005 TAX ASSESS-
MENT OF REAL PROPERTY OWNED
BY BMI CONSTRUCTION CO., L.L.C.**

No. 103,641.

Supreme Court of Oklahoma.

Jan. 29, 2008.

**198**

Thomas G. Potts, David W. Wulfers, and Craig A. Mirkes, James, Potts & Wulfers, Inc., Tulsa, OK, for Appellant.

James C. Hodges, R. Louis Reynolds, and Rebecca Wood Hunter, Eller and Detrich, Tulsa, OK, for Appellee.[1]

OPALA, J.

¶ 1 Two issues are raised in this appeal. First, Assessor challenges the constitutionality of 68 O.S. Supp.2004 § 2817(I) to the extent that provision requires Taxpayer's lots to be valued at the developers' acquisition cost. From a review of the record and briefs submitted, the court finds that today's decision in *Liddell v. Heavner*, 2008 OK 6, 180 P.3d 1191, disposes of this issue. *Liddell* holds that the valuation method authorized by the provisions of 68 O.S. Supp. 2004 § 2817(I) for platted lots in additions or subdivisions is inconsistent with the fair cash value standard of Article X, § 8(A)(2) of the Oklahoma Constitution. To avoid placing an undue hardship on county assessors and property owners who have acted in justifiable reliance on the tainted provision's conformity to the Constitution, we restricted the effect of *Liddell*[2] "to property valuations made after the date this opinion becomes final." [3] The valuations challenged by Taxpayer in this cause precede that date. **Assessor cannot hence rely on the constitutional invalidity of § 2817(I)'s valuation method in defense of his refusal to apply that method**

to **Taxpayer's lots.** The second and sole remaining issue to be decided is whether Taxpayer's vacant lots qualified for valuation using the developers' acquisition cost method of § 2817(I). We answer in the affirmative.

I

**THE ANATOMY OF LITIGATION**

¶ 2 In 2004, BMI Construction Co., L.L.C. (Taxpayer or BMI) purchased from developers four vacant lots located in Tulsa County for the purpose of building homes. Two of the lots were in a tract that was not platted as of 1 January 2004 and hence were not separately assessed for ad valorem tax purposes until 1 January 2005, after BMI purchased them. At that time, Ken Yazel, the Tulsa County Assessor ("Assessor"), valued the two lots at the price BMI paid for them. The other two lots were platted in 2003 and were assessed for Tax Year 2004 while they were still owned by the developer. For Tax Year 2004, these two lots were valued as set out in the provisions of 68 O.S. Supp.2004 § 2817(I) [hereinafter referred to as "§ 2817(I)"],[4] by dividing the total purchase price paid by the developer for the entire tract by the number of lots into which the tract was subdivided ("developers' acquisition cost"). After BMI purchased these two lots, Assessor increased their valuation for Tax Year 2005 to the price BMI paid for them. The use classification of all four lots as of 1 January 2005 was residential, having been changed from agricultural to residential upon the filing of the plats.

¶ 3 BMI objected at an informal hearing before Assessor to the valuations given to all four lots, arguing that they should have been valued at the developers' acquisition cost as set out in § 2817(I).[5] Assessor refused to

---

1. Identified herein are only those counsel for the parties whose names appear on the appellate paperwork and who have entered an appearance in this cause (as required by Okla. Sup.Ct. R. 1.5(a), 12 O.S.2001, Ch. 15, App.1).

2. *Liddell v. Heavner*, 2008 OK 6, 180 P.3d 1191.

3. *Id.* at ¶ 31, at 1203–04.

4. *See infra* ¶ 10 for the text of 68 O.S. Supp.2004 § 2817(I).

5. The terms of 68 O.S. Supp.2004 § 2876(D) provide taxpayers with a procedure for objecting to certain actions of the county assessor, including increases in valuation. The terms of 68 O.S. Supp.2004 § 2876(F) require the county assessor to schedule an informal hearing with a protesting taxpayer who has filed a complaint pursuant to § 2876(D). The pertinent provisions of § 2876(D) state:

   "The taxpayer shall have twenty (20) working days from the date the notice was mailed or in the event that notice was delivered from the

alter the contested valuations. BMI appealed from this decision to the Tulsa County Board of Equalization (the "Board"), which sustained all four valuations.[6]

¶4 On 10 June 2005, BMI filed separate appeals to the District Court, Tulsa County, from each of the Board's decisions.[7] On 29 July 2005, Assessor moved without objection from BMI to consolidate the separate appeals. The District Court, J. Michael Gassett, trial judge, ordered the four appeals consolidated into a single, surviving cause to bear the case number of the earliest appeal filed and retained the consolidated cause for disposition before him by a single judgment.

¶5 The parties filed a joint stipulation of facts on 13 January 2006 and on 10 February 2006 filed counter motions for summary judgment with briefs in support. Because Assessor's motion for summary judgment *inter alia* challenged the constitutionality of § 2817(I), the trial court gave the Oklahoma Attorney General an opportunity to intervene

to defend the statute's validity. The Attorney General declined.

¶6 After hearing argument on the parties' motions, the trial court on 24 July 2006 gave summary judgment to BMI.[8] The judgment orders the Tulsa County Treasurer to return the overpayments of taxes on the four lots to BMI[9] and orders Assessor to pay BMI accrued interest on the overpayments. Assessor brought this appeal which, as circumscribed by today's decision in *Liddell*,[10] stands retained for this court's disposition. The Oklahoma State School Boards Association, the Cooperative Council for Oklahoma School Administration, and the United Suburban Schools Association requested permission to file a brief amicus curiae in support of Assessor's challenge to the constitutionality of § 2817(I). While appellant's motion to retain was under consideration, the Vice Chief Justice denied the amicus application without prejudice to its reconsideration by the reviewing court. We now re-affirm the Vice Chief Justice's decision not to accept the proffered amicus brief.

date of delivery in which to file a written complaint with the county assessor specifying objections to action taken by the county assessor; ...."

The pertinent terms of § 2876(F) state:
"The county assessor shall schedule an informal hearing with the taxpayer to hear the protest as to the disputed valuation or addition of omitted property."

6. The terms of 68 O.S. Supp.2004 § 2876(F) give the taxpayer the right to file with the county board of equalization an appeal of the county assessor's final action on a disputed matter as to which an informal hearing was conducted. The pertinent terms of § 2876(F) state:

"Within ten (10) working days of the date the notice [of the county assessor's final action] is mailed or delivered, the taxpayer may file an appeal with the county board of equalization."

7. The terms of 68 O.S.2001 § 2880.1(A) give both the taxpayer and the county assessor the right to appeal from an order of the county board of equalization. The pertinent terms of § 2880.1(A) state:

"Both the taxpayer and the county assessor shall have the right of appeal from any order of the county board of equalization to the district court of the same county, and right of appeal of either may be either upon questions of law or fact including value, or upon both questions of law and fact...."

8. The judgment does not expressly address either the constitutional or statutory defenses raised by Assessor to justify his refusal to apply the § 2817(I) to Taxpayer's lots, but a ruling on both defenses adverse to Assessor is implicit in the judgment.

9. The provisions of 68 O.S.2001 § 2884(A) state that a taxpayer who appeals to the district court from a decision of a board of equalization must pay into the county treasury the full amount of any disputed taxes. The provisions of 68 O.S. 2001 § 2884(B) require a taxpayer who has brought such an appeal to file a notice in the office of the county treasurer that an appeal is pending. The record on appeal in this case does not clearly show by means of any recorded instrument or document or by testimony that either of these statutory prerequisites has been completed. Still, it may reasonably be inferred from the trial court's judgment, which orders the county treasurer to reimburse BMI, that BMI must have paid the taxes into the county treasury. In any event, Assessor has not alleged that BMI failed to comply with the payment and notice provisions of § 2884. We hence assume that all statutorily-imposed procedural prerequisites for bringing an appeal from an adverse decision of a board of equalization were met and we do not address the consequences of one's failure to meet the payment and/or notice requirements.

10. *Supra* note 2.

## II

## THE STANDARD OF REVIEW FOR APPEALABLE

## PRODUCTS OF SUMMARY PROCESS

¶ 7 We review today a trial court's grant of summary judgment. Summary process-a special pretrial procedural track pursued with the aid of acceptable probative substitutes [11] is a search for undisputed material facts which, *sans* forensic combat, may be utilized in the judicial decision-making process.[12] Summary relief is permissible where neither the material facts nor any inferences that may be drawn from uncontested facts are in dispute, and the law favors the movant's claim or liability-defeating defense.[13] Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or defense afford legitimate support for nisi prius resort to summary process for a claim's adjudication.[14]

¶ 8 Summary relief issues stand before us for de novo review.[15] All facts and inferences must be viewed in the light most favorable to the non-movant.[16] Just as *nisi prius* courts are called upon to do, so also appellate tribunals bear an affirmative duty to test for its legal sufficiency all evidentiary material received in summary process as support for the relief received by the movant.[17] Only if the court should conclude there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary relief in its favor.[18]

¶ 9 Although a statutory presumption of correctness is given on appeal to an assessor's valuation of property,[19] that presumption does not extend to our review of a trial court's ruling that construes and applies a statutory valuation method. Statutory construction is a question of law, which stands before us for *de novo* review.

11. " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson v. Okla. Memorial Hosp.*, 1995 OK 112, ¶ 15, n. 35, 909 P.2d 765, 773, n. 35. *See also Seitsinger v. Dockum Pontiac, Inc.*, 1995 OK 29, ¶¶ 16–17, 894 P.2d 1077, 1080–81; *Davis v. Leitner*, 1989 OK 146, ¶ 15, 782 P.2d 924, 927.

12. The focus in summary process is not on the facts which might be proven at trial, but rather on whether the evidentiary material in the record tendered for elimination of trial reveals only undisputed material facts supporting but a single inference that favors the movant's quest for relief. *Polymer Fabricating, Inc. v. Employers Workers' Comp. Ass'n*, 1998 OK 113, ¶ 7, 980 P.2d 109, 112; *Hulsey v. Mid–America Preferred Ins. Co.*, 1989 OK 107, ¶ 8, n. 15, 777 P.2d 932, 936, n. 15.

13. To that end, the court may consider, in addition to the pleadings, items such as depositions, affidavits, admissions, answers to interrogatories, as well as other evidentiary materials which are offered in acceptable form without objection from other parties or are admitted over the challenging exception. *Polymer Fabricating, supra* note 12, at ¶ 8, at 113; *Seitsinger, supra* note 11.

14. *Russell v. Bd. of County Comm'rs*, 1997 OK 80, ¶ 7, 952 P.2d 492, 497. *See also Gray v. Holman*, 1995 OK 118, ¶ 11, 909 P.2d 776, 781.

15. An order that grants summary relief, in whole or in part, disposes solely of law questions. It is reviewable by a *de novo* standard. *Brown v.*

*Nicholson*, 1997 OK 32, ¶ 5, 935 P.2d 319, 321. *See also Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084 ("Issues of law are reviewable by a de novo standard and an appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings.").

16. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

17. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685 (*approved for publication* by the Oklahoma Supreme Court).

18. It is not the purpose of summary process to substitute a trial by affidavit for one by jury. Rather, it is to afford a method of summarily terminating a case (or eliminating from trial some of its issues) when only questions of law remain. *State ex rel. Fent v. State ex rel. Okla. Water Resources Bd.*, 2003 OK 29, ¶ 14, n. 31, 66 P.3d 432, 440, n. 31; *Bowers v. Wimberly*, 1997 OK 24, ¶ 18, 933 P.2d 312, 316; *Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶ 15, 586 P.2d 726, 730.

19. The provisions of 68 O.S.2001 § 2880.1(E) state:

"In all appeals taken by the county assessor the presumption shall exist in favor of the correctness of the county assessor's valuation and the procedure followed by the county assessor."

## III

## TAXPAYER'S VACANT RESIDENTIAL LOTS QUALIFY FOR THE DEVELOPERS' ACQUISITION COST METHOD OF DETERMINING THEIR FAIR CASH VALUE

¶ 10 The pertinent provisions of § 2817(I) state:

"... [T]he fair cash value of a lot in any platted addition or a subdivision in a city, town or county zoned for residential, commercial, industrial or other use shall be deemed to be the total purchase price paid by the developer of the addition or subdivision for the land comprising the platted addition or subdivision divided by the number of lots contained in the addition or subdivision *until the lot with building or buildings located thereon shall have been conveyed to a bona fide purchaser* or shall have been occupied other than as a sales office by the owner thereof, or shall have been leased, whichever event shall first occur." (emphasis added)

¶ 11 Assessor argues that BMI is a bona-fide purchaser of each of the lots in question and hence is not entitled to have its lots valued using the developers' acquisition cost method of determining fair cash value as set out in § 2817(I). Assessor asks us to construe § 2817(I) to mean that when a developer conveys to another person a lot that has previously been valued at the developers' acquisition cost, that person is a bona fide purchaser and the lot must be revalued at its fair cash value regardless of whether a building has been constructed on it.

¶ 12 BMI argues that the statute prohibits an assessor from revaluing a lot until (1) a building has been constructed on the lot and (2) either (a) the lot and building have been conveyed to a bona fide purchaser, (b) the lot and building have been occupied other than as a sales office by the lot's owner, or (c) the lot and building have been leased.[20] BMI contends that the plain language of the stat-ute makes the construction of a building a mandatory precondition for a lot's revaluation. Because no building had been constructed on any of the lots in question prior to the date BMI purchased them, BMI argues that it is immaterial whether it was a bona fide purchaser.

¶ 13 We agree with BMI. The plain terms of § 2817(I) prohibit revaluation of a platted lot in an addition or subdivision "until the lot with building or buildings located thereon" shall have been conveyed to a bona fide purchaser, leased, or occupied other than as a sales office. Assessor would have us insert a qualifying phrase into § 2817(I) so that the phrase "until the lot with building or buildings located thereon shall have been conveyed ..." would say instead "until the lot with building or buildings located thereon, *if any*, shall have been conveyed...." Had the legislature wanted to confine the application § 2817(I) to developers, it could easily have done so. It did not. Where a word or phrase is absent from a statute, we must presume that its absence is intentional.[21] The statute shows a clear legislative intent to extend the developers' acquisition cost method of determining fair cash value to those who purchase lots from developers so long as the lots remain vacant.

¶ 14 The Legislature's recent amendment to § 2817(I), which became effective on 1 January 2006, makes it clear that the intent of the statute is to extend, at least for a limited period of time, its valuation formula to home builders who purchase vacant lots from developers. The amendment states:

"One who purchases a lot for the purposes of constructing and selling a building on such lot shall not be deemed to be a bona fide purchaser for purposes of this section. However, if the lot is held for a period longer than two (2) years before construction, then the assessor may consider the

---

**20.** The parties have stipulated that the lots were not occupied other than as a sales office and that they were not leased.

**21.** *TXO Production Corp. v. Okla. Corp. Comm'n*, 1992 OK 39, ¶ 7, 829 P.2d 964, 969 (recognizing the presumption "that the legislature has expressed its intent in a statute and that it intended what it so expressed").

lot to have been conveyed to a bona fide purchaser."[22]

Even an ambiguous statute, which § 2817(I) is not, may be clarified through the subsequent enactment of an amendatory provision.[23]

¶ 15 The record in this cause shows that in 2004 BMI purchased four platted lots in various subdivisions in Tulsa County. Even if BMI was a bona fide purchaser of the lots as that term is commonly understood, it was still entitled to have the four lots valued using the developers' acquisition cost formula set out in § 2817(I) because none of the lots had a building or buildings constructed on them as of 1 January 2005.

## IV

## SUMMARY

¶ 16 The plain terms of § 2817(I) direct county assessors to value platted lots in additions or subdivisions using the developers' acquisition cost method until the lots with a building or buildings located thereon have been conveyed or utilized as specified in § 2817(I). Assessor was required to value the four lots here at issue in accordance with the provisions of § 2817(I) as they stood prior to today's decision in *Liddell*.[24] He did not. The trial court's judgment ordering Assessor and the Tulsa County Treasurer to refund the amount Taxpayer overpaid in ad valorem taxes for the lots in question together with accrued interest is affirmed.

¶ 17 **THE TRIAL COURT'S JUDGMENT IS AFFIRMED**

¶ 18 WINCHESTER, C.J., EDMONDSON, V.C.J. and HARGRAVE, OPALA, WATT, TAYLOR, COLBERT and REIF, JJ., concur

¶ 19 KAUGER, J., dissents

**22.** *See Laws* 2005, c. 381, § 13, eff. Jan. 1, 2006.

**23.** *Samman v. Multiple Injury Trust Fund*, 2001 OK 71, ¶ 13, 33 P.3d 302, 307; *Polymer Fabricating, Inc., supra* note 12 at ¶ 15, at 114 (stating that "[w]here an earlier legislative enactment is unclear in some respect and a later enactment

KAUGER, J., dissenting:

¶ 1 I dissent for the reasons expressed in my dissent in *Liddell v. Heavner*, (No. 102,-732) 2008 OK 6, 180 P.3d 1191.

attempts to remove the ambiguity, the amendatory statute constitutes a clarifying enactment that is to be given retrospective force. (citations omitted)").

