OSCN Found Document:STITT v. TREAT

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 STITT v. TREAT
2024 OK 21
Case Number: 121497
Decided: 04/02/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 21, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

THE HONORABLE J. KEVIN STITT, Governor of the State of Oklahoma, in his official capacity, Petitioner,
v.
THE HONORABLE GREG TREAT, Senate President Pro Tempore, in his official capacity, and THE HONORABLE CHARLES MCCALL, Speaker of The House, in his official capacity, Respondents.

ORIGINAL PROCEEDING FOR DECLARATORY RELIEF

¶0 Petitioner brought this action seeking declaratory relief that Respondents lacked authority to validly pass two bills relating to Tribal compacts on behalf of the State. We assume original jurisdiction and deny declaratory relief.

ORIGINAL JURISDICTION ASSUMED;
DECLARATORY RELIEF DENIED.

Trevor S. Pemberton, Remington D. Dean, OFFICE OF GOVERNOR J. KEVIN STITT, Oklahoma City, Oklahoma for Petitioner

Gentner Drummond, Garry M. Gaskins, II, Joseph M. Watt, OFFICE OF ATTORNEY GENERAL, Oklahoma City, Oklahoma
and
V. Glenn Coffee, Denise Lawson, GLENN COFFEE & ASSOCIATES, PLLC, Oklahoma City, Oklahoma for Respondents

OPINION

ROWE, V.C.J.:

Petitioner, the Honorable J. Kevin Stitt, Governor of the State of Oklahoma, requests the Court to assume original jurisdiction and declare Senate Bill 26x and House Bill 1005x invalid under Oklahoma law.

BACKGROUND

¶1 In 1991, the United States Supreme Court held that the State of Oklahoma could collect taxes on tobacco products sold on Indian lands to non-tribal members and held that "States may also enter into agreements with the tribes to adopt a mutually satisfactory regime for the collection of this sort of tax." Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505, 514 (1991). Two years later, the U.S. Supreme Court held that Oklahoma lacked jurisdiction to impose taxes on vehicles owned by Indians who live and garage their vehicles in Indian country. Okla. Tax Comm'n v. Sac & Fox Nation, 508 U.S. 114, 128 (1993). In light of these decisions, the State of Oklahoma, through the Governor, negotiated and entered into compacts with Tribal nations regarding excise taxes on tobacco products and motor vehicle licensing and registration fees in Indian country.[1]

¶2 The current dispute revolves around various compacts negotiated and entered into by then-Governor Mary Fallin and the Tribes on behalf of the State of Oklahoma in 2013.[2] The first set of compacts govern the excise tax on tobacco products sold by the Chickasaw Nation and the Choctaw Nation ("the Tobacco Compacts"), which were set to expire December 31, 2023, unless extended by agreement between the State and Tribes.[3] The second set of compacts govern motor vehicle licensing and registration of vehicles located inside and outside of the jurisdictional area of the Cherokee Nation ("the Motor Vehicle Compacts").[4] Unlike the Tobacco Compacts, the Motor Vehicle Compacts automatically renewed on August 16, 2023, pursuant to the terms of the compacts. In an attempt to renegotiate the terms of the Tobacco Compacts, Governor Stitt ("the Governor") extended offers to the Tribes which were not accepted, leaving the compacts unchanged.

¶3 On May 17, 2023, through the filing of a Joint Order, the Oklahoma Legislature ("the Legislature") convened a special session to run concurrently with the regular session.[5] The stated purpose of the special session was to discuss: (1) the appropriation of funds for the annual state budget for years 2023 through 2024; (2) legislation related to implementing and administering budget-related funds; and (3) expenditure of federal funds received under the American Rescue Plan Act of 2021.[6] During the special session, the Legislature passed two bills related to State-Tribal compacts--Senate Bill 26x ("S.B. 26x") and House Bill 1005x ("H.B. 1005x").

¶4 S.B. 26x, codified as 68 O.S. § 346.1, offers any Tribe that is a party to an existing State-Tribal tobacco products compact to extend the expiration of the compact to December 31, 2024.[7] Section 1 of S.B. 26x reads as follows:

A. The Legislature finds that:

1. As codified in Section 1221 of Title 74 of the Oklahoma Statutes, Oklahoma's standing policy is to work in a spirit of cooperation with all federally recognized Indian tribes in ENR. S. B. NO. 26x Page 2 furtherance of federal policy for the benefit of both the State of Oklahoma and Tribal governments;

2. Oklahoma has benefited from its implementation of this policy through, among other things, the formation and entry of intergovernmental agreements or compacts with Tribal nations on a variety of subjects; and

3. As authorized by Section 346 of Title 68 of the Oklahoma Statutes, Oklahoma entered numerous compacts with Tribal nations relating to taxation of tobacco product sales, which agreements have benefited all parties by reducing intergovernmental disputes, increasing Oklahoma tax revenues, and providing a stable environment for Tribal and non-Tribal economic activity.

B. Consistent with the Legislature's intent declared in subsection B of Section 346 of Title 68 of the Oklahoma Statutes, the State of Oklahoma offers the following supplemental term to any Tribe that is party to a State-Tribal tobacco products sales tax compact entered pursuant to Section 346 of Title 68 of the Oklahoma Statutes or otherwise which was in effect on January 1, 2023, but is set to expire prior to December 31, 2024:

SUPPLEMENTAL TERM TO

TOBACCO PRODUCTS EXCISE TAX COMPACT

Between the [NAME OF TRIBE]

and the STATE OF OKLAHOMA

The tobacco products excise tax compact between the [NAME OF TRIBE] and the STATE OF OKLAHOMA is hereby affirmed and shall be deemed in effect until December 31, 2024, and restored, and any action to unilaterally terminate the compact prior to that date shall be null and void.

C. Further and also consistent with such intent, the State of Oklahoma offers the following restoration of and supplemental term to any Tribe that is party to a State-Tribal tobacco products excise tax compact entered pursuant to Section 346 of Title 68 of the Oklahoma Statutes or otherwise and which was in effect as of January 1, 2019, but which expired prior to the effective date of this act:

RESTORATION OF AND SUPPLEMENTAL TERM TO

TOBACCO PRODUCTS EXCISE TAX COMPACT TERM

Between the [NAME OF TRIBE]

and the STATE OF OKLAHOMA

Notwithstanding its expiration prior to the effective date of this act, the tobacco products excise tax compact between the [NAME OF TRIBE] and the STATE OF OKLAHOMA in effect on January 1, 2019, is hereby affirmed and restored to effect as of July 1, 2023, and shall remain in effect until December 31, 2024, and any action to unilaterally terminate the compact prior to that date shall be null and void.

D. Tribal acceptance of an offer codified in either subsection B or C of this section shall be indicated by letter from the Tribal party's governing body or official reciting the terms set forth above and delivered to the Oklahoma Tax Commission. Such letter shall then be filed with the Secretary of State.

S.B. 26x, 59th Leg., 1st Extra. Sess. (May 17, 2023); 68 O.S. § 346.1.

¶5 H.B. 1005x, codified as 74 O.S. 1221.B, offers any Tribe that is a party to an existing State-Tribal motor vehicle licensing and registration compact to extend the expiration of the compact to December 31, 2024.[8] Section 1 of H.B. 1005x reads as follows:

A. The Legislature finds that:

1. Oklahoma has benefited from its implementation of the policy set forth in Section 1221 of Title 74 of the Oklahoma Statutes through, among other things, the formation and entry of intergovernmental agreements or compacts with Tribal nations on a variety of subjects;

2. As an exercise of executive authority consistent with this codified policy, the Oklahoma Governor formed and entered certain Tribal-State agreements relating to motor vehicle licensing and registration matters, which agreements have benefited all parties by reducing intergovernmental disputes and increasing revenues available for roads, bridges, schools, and other valuable community infrastructure.

B. The State of Oklahoma now offers the following supplemental term to any Tribe that was, as of January 1, 2023, a party to a motor vehicle licensing or registration agreement previously executed by an Oklahoma Governor:

AFFIRMATION AND EXTENSION OF

MOTOR VEHICLE LICENSING/REGISTRATION COMPACT

Between the [NAME OF TRIBE]

and the STATE OF OKLAHOMA

The motor vehicle licensing or registration and license tag agreement formed and entered by the Oklahoma Governor and the [NAME OF TRIBE] is hereby affirmed as a compact between the STATE OF OKLAHOMA and [NAME OF TRIBE] and shall be in effect until December 31, 2024, and any action to unilaterally terminate or to issue written notice of the compact's nonrenewal prior to that date shall be null and void.

C. Tribal acceptance of this offer shall be indicated by letter from the Tribal party's governing body or official reciting the terms set forth above and delivered to the Oklahoma Tax Commission. Such acceptance letter, including the terms set forth above and delivered to the Oklahoma Tax Commission, shall then be filed with the Oklahoma Secretary of State.

H.B. 1005x, 59th Leg., 1st Extra. Sess. (May 17, 2023); 74 O.S. § 1221.B.

¶6 The Governor vetoed both S.B. 26x and H.B. 1005x. Despite the Governor's veto, both S.B. 26x and H.B. 1005x became law on July 31, 2023, when the Oklahoma House of Representatives and the Oklahoma Senate voted to override the Governor's veto.[9]

¶7 On July 31, 2023, the Governor filed an Application to Assume Original Jurisdiction and Petition for Declaratory Relief in this Court, requesting declaratory judgment that both S.B. 26x and H.B. 1005x are invalid on three grounds. First, the Governor alleges that the bills are the products of an unlawful concurrent special session of the Legislature and that the call of the special session failed to specifically reference the compacts. Second, the Governor argues that the actions of the Legislature in passing these bills violates Article IV, Section 1 of the Oklahoma Constitution by exercising powers that properly belong to the Executive branch. Third, the Governor argues that the bills contradict his exclusive authority to negotiate State-Tribal compacts that is conferred upon him by other statutes.

DISCUSSION

I. The Process by Which the Legislature Passed S.B. 26x and H.B. 1005x Did Not Violate the Constitution.

¶8 The Governor's foremost argument pertains to the special session convened on May 17, 2023. The Governor contends that the language of the Oklahoma Constitution implies that a special session cannot run simultaneously with a regular session. The Governor argues that since S.B. 26x and H.B. 1005x were enacted during a concurrent special session they should be deemed invalid. The Legislature asserts that nothing in the Oklahoma Constitution prohibits a special session from running concurrent with a regular session.

¶9 Additionally, the Governor urges us to conclude that the Legislature exceeded the call of the special session by passing S.B. 26x and H.B. 1005x. According to the Governor, the Oklahoma Constitution requires that the call of the special session outline its specific purpose, and because State-Tribal compacts were not specifically mentioned in the call, S.B. 26x and H.B. 1005x should be invalidated. Conversely, the Legislature contends that given the significant impact State-Tribal compacts have on the state's budget, and that S.B. 26x and H.B. 1005x are primarily aimed at state revenue, these bills fall within the scope of legislation related to the implementation and administration of budget-related funds, as outlined in the call of the special session.

A. The Concurrent Special Session was Constitutional.

¶10 The Governor contends that the Legislature's concurrent special session is unconstitutional. Emphasizing the balance of powers, the Governor asserts that while the constitution vests legislative authority in the Legislature, this authority is also constrained by the constitution to ensure the prevention of abuses of legislative power.[10] The Governor maintains that the concurrent special session was an overstep of the Legislature's constitutional limits. Further, the Governor argues that because the Oklahoma Constitution does not authorize a special session concurrent with the regular session, and here the Legislature called a concurrent special session, any bills passed during it are invalid. In support of his argument, the Governor relies on Simpson v. Hill where we stated that "[i]n the absence of a constitutional provision authorizing the Legislature of the state to convene itself, it cannot do so, and any acts or intended acts of a member, or members thereof, if so assembled, are without authority of law, whether it be for legislative or inquisitorial purposes." Simpson v. Hill, 1927 OK 453, ¶ 0, 263 P. 635, 635-36.

¶11 We are not inclined to inject ourselves into the business of the Legislature unless we find that a legislative act is "plainly and clearly within the express prohibitions and limitations fixed by the Constitution." Sanchez v. Melvin, 1966 OK 116, ¶ 10, 418 P.2d 639, 641. In examining the constitutionality of legislative action, we look to the constitution to determine whether the act is prohibited.

We do not look to the Constitution to determine whether the Legislature is authorized to do an act but rather to see whether it is prohibited. If there is any doubt as to the Legislature's power to act in any given situation, the doubt should be resolved in favor of the validity of the action taken by the Legislature. Restrictions and limitations upon legislative power are to be construed strictly, and are not to be extended to include matters not covered or implied by the language used.

Tate v. Logan, 1961 OK 136, ¶ 19, 362 P.2d 670, 674-75.

¶12 We find the Governor's reliance on Simpson inapposite. Any instructive value taken from Simpson is limited as that case was decided more than 50 years before the passage of Article V, § 27A, which now allows the Legislature to call a special session subject to the requirements stated in the text of our constitution. Okla. Const. Art. V, § 27A(1) ("The Legislature may be called into special session by a written call for such purposes as may be specifically set out in the call, signed by two-thirds (2/3) of the members of the Senate and two-thirds (2/3) of the members of the House of Representatives when it is filed with the President Pro Tempore of the Senate and the Speaker of the House of Representatives who shall issue jointly an order for the convening of the special session.")

¶13 Additionally, the Governor points to an attorney general opinion which states "[t]he Constitution does not place a time restriction on when a special session may be called by the Legislature and contemplates that a special session may be convened at some time other than during a regular session." 2013 OK AG 8, ¶ 20. Although an attorney general opinion is persuasive authority for the court, we are not bound by the opinion of an attorney general. Edwards v. Bd. of Cnty. Comm'rs of Canadian Cnty., 2015 OK 58, ¶ 15, 378 P.3d 54, 60. In the opinion relied upon by the Governor, the attorney general was asked to address whether the Legislature could convene a special session in the interim period between after the general election and before the organizational session. 2013 OK AG 8, ¶ 16. In response, the attorney general stated that the Legislature may convene a special session during that interim period so long as other constitutional requirements were met. Id. at ¶ 20. The attorney general continued on to state that where legislative leadership has not yet been elected, the Legislature is unable to call itself into special session because it would be unable to fulfill the constitutional requirement that the leaders of both houses must issue a joint order convening the special session. Id. at ¶¶ 21-23. However, where there is an elected President Pro Tempore and Speaker of the House--as there is here--so long as the Legislature satisfies the remaining conditions of Okla. Const. art. V, § 27A(1), there is no prohibition on the Legislature's ability to call a special session.[11] The Governor further argues that special sessions are 'extra' and 'meant for extraordinary circumstances.'[12] Though we agree with the Governor that special sessions are meant to be extraordinary as compared to a regular session, we find no provisions in our constitution expressly preventing the Legislature from convening a concurrent special session.

¶14 Given the absence of any constitutional provision expressly prohibiting the Legislature from convening a concurrent special session, we cannot find the concurrent special session plainly and clearly violated any express prohibitions set by our constitution.

B. The Consideration of S.B. 26x and H.B. 1005x Did Not Exceed the Call of the Special Session.

¶15 The Governor additionally posits that even if the concurrent special session were constitutional, S.B. 26x and H.B. 1005x are void because they plainly exceed the call of the session. Article V, § 27A states "[t]he Legislature may be called into special session by a written call for such purposes as may be specifically set out in the call. . . ." Okla. Const. Art. V, § 27A(1).

¶16 Our jurisprudence requires that when construing constitutional provisions granting the Legislature the authority to act, we must give great weight to the Legislature's interpretation of those provisions. Texas Co v. State ex rel. Coryell, 1947 OK 53, ¶ 11, 180 P.2d 631, 635. We presume that every statute passed by the Legislature is constitutional and that the Legislature observed the requirements in our constitution with great caution when enacting a statute. Way v. Grand Lake Ass'n, Inc., 1981 OK 70, ¶ 39, 635 P.2d 1010, 1017; Glasco v. State ex rel. Okla. Dep't of Corr., 2008 OK 65, ¶ 27, 188 P.3d 177, 186. As we stated in Dobbs v. Bd. Of Cnty. Cmm'rs of Okla. Cnty., "[t]he people of the state have...the right to limit the power of the state legislature, and any limitation on the power...should arise only upon specific declarations and should be strictly construed against implied limitations and any doubt arising should be resolved in favor of the power of the Legislature." Dobbs v. Bd. Of Cnty. Cmm'rs of Okla. Cnty., 1953 OK 159, ¶ 16, 257 P.2d 802, 806. In our construction of constitutional restrictions placed on the Legislature, "a statute will be upheld against any constitutional attack unless it is clearly and overtly inconsistent with the constitution." Glasco, ¶ 27, 188 P.3d at 286.

¶17 The Legislature's call of the special session included the appropriation of funds for the annual state budget and Legislation related to implementing and administering budget-related funds.[13] The Legislature notes that the fiscal analysis for both S.B. 26x and H.B. 1005x indicate that without continuation or extension of the Tobacco and Motor Vehicle Compacts, there would be a significant decrease in state revenue, thereby impacting the state budget.[14] The terms of the bills at issue make clear that the Tobacco and Motor Vehicle Compacts, which stand to be extended by S.B. 26x and H.B. 1005x, will have an impact on revenue collection and the budget process for the State. For example, S.B. 26x states that the Tobacco Compacts entered into by the State "have benefited all parties by reducing intergovernmental disputes, increasing Oklahoma tax revenues, and providing a stable environment for Tribal and non-Tribal economic activity." 68 O.S. § 346.1(A)(3). Further, the Legislature contends that the State's budget will undoubtedly be affected if the Tobacco and Motor Vehicle Compacts are allowed to expire. Similarly, H.B. 1005x states that the Motor Vehicle Compacts "have benefited all parties by reducing intergovernmental disputes and increasing revenues available for roads, bridges, schools and other valuable community infrastructure." 74 O.S. § 1221.B(A)(2). As noted by the bill summaries for S.B. 26x and H.B. 1005x, the state budget is affected by the revenue generated from an extension of the Tobacco and Motor Vehicle Compacts.[15] The State-Tribal compacts and state revenue flowing from these compacts fall--at the very least indirectly--within the subject matter stated in the call of the special session--that being the implementation and administration of budget-related funds.

¶18 We find no reason to invalidate S.B. 26x and H.B. 1005x, as the two bills are not clearly and overtly violative of the constitutional requirements for the call of the special session--the offered extension of State-Tribal compacts falls within the scope of legislation related to the implementation and administration of budget-related funds, as outlined in the call of the special session. Accordingly, the Legislature's consideration of S.B. 26x and H.B. 1005x during the special session was constitutional.

¶19 Although we find that S.B. 26x and H.B. 1005x are within the subject matter outlined in the call of the special session, it is imperative to underscore that our present holding does not diminish the significance of the requirements set forth by Article V, § 27A. It should be noted that this is a very fact-specific inquiry, and our holding today should not be misconstrued to mean that the specificity requirement of Article V, § 27A does not impose a meaningful constraint on the Legislature.

II. The Governor's Authority to Negotiate and Enter into Compacts with Tribes is Vested by Statute, not the Constitution.

¶20 The Oklahoma Constitution states:

The Governor shall cause the laws of the State to be faithfully executed, and shall conduct in person or in such manner as may be prescribed by law, all intercourse and business of the State with other states and with the United States, and he shall be a conservator of peace throughout the State.

Okla. Const. art. VI, § 8. The Governor argues that the authority to negotiate State-Tribal compacts is exclusively vested with the Executive branch by the Oklahoma Constitution. More specifically, the Governor argues that the language of Article VI stating the Governor shall conduct the State's "intercourse and business...with other states and with the United States" specifically vests the authority to negotiate Tribal compacts with the Executive branch. Okla. Const. art. VI, § 8. The Governor reads Article VI as vesting him with the exclusive authority to negotiate compacts with the Tribes.

¶21 Though Article VI, § 8 of the Oklahoma Constitution confers the Governor authority to conduct business of the State, it does not specifically state the authority extends to business with Tribes--rather, it explicitly states the Governor's authority to conduct business is limited to business "with other states and with the United States." Okla. Const. art. VI, § 8. Where the constitution is devoid of language "validly and specifically" granting the Governor authority to negotiate and enter into compacts, the Governor's authority must be created by statute or be considered invalid. Ho v. Tulsa Spine & Specialty Hospital, L.L.C., 2021 OK 68, ¶ 20, 507 P.3d 673, 679. "The Governor is without authority to exercise a discretion not validly and specifically granted by the statutory law and not within the power conferred upon the Chief Executive by the Constitution." Ritter v. State, 2022 OK 73, ¶ 15, 520 P.3d 370, 379.

¶22 The Legislature explicitly granted the Governor the authority to negotiate Tobacco and Motor Vehicle Compacts. Title 68 of the Oklahoma statutes authorize the Governor to enter into tobacco products tax compacts with Tribes:

The Governor is authorized by this enactment to enter into cigarette and tobacco products tax compacts on behalf of the State of Oklahoma with the federally recognized Indian tribes or nations of this state. The compacts shall set forth the terms of agreement between the sovereign parties regulating sale of cigarettes and tobacco products by the tribes or nations or their licensees in Indian country.

68 O.S. § 346(C).[16] Similarly, Title 74 of the Oklahoma statutes grants the Governor authority to negotiate and enter motor vehicle and licensing compacts with the Tribes:

The Governor is authorized to negotiate and enter into cooperative agreements on behalf of this state with federally recognized Indian tribal governments within this state to address issues of mutual interest. The Governor may elect to name a designee who shall have authority to negotiate and enter into cooperative agreements on behalf of the state with federally recognized Indian tribes as provided for in this section. Except as otherwise provided by this subsection, such agreements shall become effective upon approval by the Joint Committee on State-Tribal Relations.

74 O.S. § 1221(C)(1).

¶23 The Governor's authority to negotiate and enter into the Tobacco Compacts and Motor Vehicle Compacts is born of statute. Our holding today is consistent with our analysis in Griffith v. Choctaw Casino of Pocola, where we recognized that when § 1221 was passed, the Legislature authorized the Governor to negotiate and enter into compacts with Tribes on behalf of the State. Griffith v. Choctaw Casino of Pocola, 2009 OK 51, ¶ 12, 230 P.3d 488, 492 ("In 1988, the Oklahoma Legislature authorized the Governor to negotiate and enter into cooperative agreements with federally recognized Indian tribes in furtherance of federal policy and state-tribal relations, subject to approval by a legislative Joint Committee on State-Tribal Relations.")

¶24 In Treat I, we addressed whether two Tribal-gaming compacts negotiated and entered into by the Governor on behalf of the State were binding on the State when the subject of the compacts had not yet been legalized by the Legislature. Treat v. Stitt, 2020 OK 64, ¶ 8, 473 P.3d 43, 45 (Treat I). In holding that the Tribal gaming compacts were invalid under Oklahoma law, we stated that "[t]he legislative branch sets the public policy of the State by enacting law not in conflict with the Constitution. The Governor has a role in setting that policy through his function in the legislative process, but the Governor's primary role is in the faithful execution of the law." Id. ¶ 4, 473 P.3d at 44 (citations omitted). Though we recognized the Governor's authority to negotiate and enter into compacts, "the Governor must negotiate the compacts within the bounds of the laws enacted by the Legislature. . . ." Id. ¶ 5, 473 P.3d at 44.

¶25 We similarly emphasized the Governor's statutory authority to negotiate and enter into State-Tribal compacts in Treat II. Treat v. Stitt, 2021 OK 3, 481 P.3d 240 (Treat II). In Treat II, the Governor invalidly negotiated and entered into new Tribal gaming compacts because the statute granting him the authority to do so required such compacts to be within the bounds of the Model Tribal Gaming Compact or obtained through approval of the Joint Committee on State-Tribal Relations. Id. ¶ 12, 481 P.3d at 244. In holding the compacts were invalid, we stated that "[t]he Executive branch's authority to advocate and negotiate gaming compacts is statutory--not constitutional. And the use of such authority must be in conformity with statute." Id. ¶ 6, 481 P.3d at 242 (citation omitted). The Governor's authority to negotiate and enter into State-Tribal compacts is vested by statute, not the constitution.

III. The Passage of S.B. 26x and H.B. 1005x Was Not an Infringement on the Governor's Statutory Authority.

¶26 The Governor contends that, even if the constitution does not grant him the authority to negotiate and enter into State-Tribal compacts, the Legislature has exclusively delegated that power to him in 68 O.S. § 346 and 74 O.S. § 1221. According to the Governor, the passage of S.B. 26x and H.B. 1005x creates a conflict with the express terms of 68 O.S. § 346 and 74 O.S. § 1221. More specifically, the Governor posits that 68 O.S. § 346 and 74 O.S. § 1221 grant him exclusive authority to negotiate and enter into compacts with Tribes. According to the Governor, by allowing the Tribes to extend the terms of existing State-Tribal compacts, the passage of S.B. 26x and H.B.1005x hinders his ability to effectively exercise his delegated authority to negotiate and enter into such compacts, making that authority essentially meaningless.

¶27 Any potential conflict between provisions dealing with the same subject must be read harmoniously. Glasco, ¶ 17, 188 P.3d at 184. When analyzing potential conflicts between statutes, we first determine if there is a repeal by implication of the earlier statute:

[T]hat repeals by implication are not favored and all statutory provisions must be given effect if possible; unless the conflict so demonstrated is irreconciliable [sic] the earlier provision will not be repealed by the later enactment. Nothing short of irreconciliable [sic] conflict between statutes accomplishes a repeal by implication. Where such a conflict exists, the later modifies the earlier, even where both sections were enacted into the same official codification. . . . Where statutes conflict in part, the one last passed, which is the later declaration of the Legislature, should prevail, superseding and modifying the former statute only to the extent of such conflict.

City of Sand Springs v. Dep't of Public Welfare, 1980 OK 36, ¶ 28, 608 P.2d 1139, 1151 (citations omitted). We find no irreconcilable conflict between S.B. 26x and H.B. 1005x and the plain text of 68 O.S. § 346 and 74 O.S. § 1221.

¶28 Regardless of whether the authority to negotiate State-Tribal compacts was originally intended to be exclusively vested in the Governor by 68 O.S. § 346 and 74 O.S. § 1221, that authority is conditioned upon the will of the Legislature. Consequently, any delegated authority to the Governor is subject to limitation by the Legislature who retains the power to change the underlying law to limit that authority. CompSource Mutual Ins. Co. v. State ex rel. Okla. Tax. Comm'n, 2018 OK 54, ¶ 43, 435 P.3d 90, 105 ("The power exercised by the Governor, by executive order or otherwise, may be limited or granted by statute.") Any authority delegated to the Governor is subject to the will of the Legislature and must "be exercised within the limits of the legislative authorization." Wells v. Childers, 1945 OK 254, ¶ 10, 165 P.2d 358, 361.

¶29 Reading S.B. 26x and H.B. 1005x in harmony with 68 O.S. § 346 and 74 O.S. § 1221, we conclude that these provisions are not mutually exclusive. The later enacted bills do not preclude or prevent the Governor from exercising the authority granted to him by 68 O.S. § 346 and 74 O.S. § 1221. Instead, S.B. 26x and H.B. 1005x offer the Tribes the option to extend their existing compacts with the State--while simultaneously 68 O.S. § 346 and 74 O.S. § 1221 authorize the Governor to offer new terms to the Tribes.

¶30 While we see no irreconcilable conflict between the later enacted bills and 68 O.S. § 346 and 74 O.S. § 1221, even if we were unable to reconcile them harmoniously, our jurisprudence requires that "when there is a conflict between two statutes, one specific...and one general, the statute enacted for the purpose of dealing with the subject matter controls over the general statute." Mutual Injury Trust Fund v. Coburn, 2016 OK 120, ¶ 23, 386 P.3d 628, 636.[17] In this case, both 68 O.S. § 346 and 74 O.S. § 1221 grant general authority to the Governor to enter into State-Tribal compacts, whereas S.B. 26x and H.B. 1005x are specifically tailored to offer the Tribes an extension of the existing compacts without repealing the Governor's general authority. 68 O.S. § 346(C) and 74 O.S. § 1221(C)(1).

¶31 Thus, the Governor's general authority is not nullified by the legislative enactment of S.B. 26x and H.B. 1005x, rather, the extension offered the Tribes by S.B. 26x and H.B. 1005x runs concurrently with the Governor's general authority to enter into State-Tribal Compacts. We read S.B. 26x and H.B. 1005x as the Legislature offering the Tribes the option to extend their compacts while at the same time preserving the Governor's general authority to negotiate and enter into new statutory compacts. We hold the passage of S.B. 26x and H.B. 1005x was not an infringement on the Governor's general authority to negotiate and enter into State-Tribal compacts.

CONCLUSION

¶32 Original jurisdiction is assumed pursuant to this Court's publici juris doctrine. Our holding is confined to the following issues expressly raised by the parties: (1) whether the concurrent special session convened on May 17, 2023, was unconstitutional; (2) whether the passage of S.B. 26x and H.B. 1005x during the special session are void because they plainly exceeded the limited call of the session; (3) whether S.B. 26x and H.B. 1005x are unconstitutional because they infringe on the Governor's constitutional authority to conduct business; and (4) whether S.B. 26x and H.B. 1005x are void because they violate the plain text of 68 O.S. § 346 and 74 O.S. § 1221.

¶33 We hold that the Legislature had the Constitutional authority to consider S.B. 26x and H.B. 1005x during a concurrent Special Session, and that the Legislation did not exceed the call of the Special Session. Additionally, we hold that the Governor's authority to negotiate State-Tribal compacts is statutory, not constitutional. We further hold that the passage of S.B. 26x and H.B. 1005x was not an infringement on the Governor's statutory authority to negotiate and enter into State-Tribal compacts.

ORIGINAL JURISDICTION ASSUMED;
DECLARATORY RELIEF DENIED.

Rowe, V.C.J., Kauger, Winchester, Edmondson, Combs, Gurich and Darby, JJ., concur.

Kane, C.J. and Kuehn, J. (by separate writing), concur in part; dissent in part.

FOOTNOTES

[1] E.g., Quapaw Tribe/State Tobacco Tax Compact, Quapaw Tribe of Oklahoma-Okla., Sept. 3, 1992, Okla. Sec'y of State No. 27595; Tribal/State Tobacco Tax Compact, Choctaw Nat.-Okla., Jun. 8, 1992, Okla. Sec'y of State No. 27175; Tribal/State Tobacco Tax Compact, Chickasaw Nat.-Okla., Jun. 8, 1992, Okla. Sec'y of State No. 27176; Tribal/State Tobacco Tax Compact, Cherokee Nat.-Okla., Jun. 8, 1992, Okla. Sec'y of State No. 27177; Tribal/State Tobacco Tax Compact, Seminole Nat.-Okla., Jun. 4, 1992, Okla. Sec'y of State No. 27164; Cherokee Nation And State Of Oklahoma Tribal-State Motor Vehicle Licensing Compact, Oct. 1, 2002, Okla. Sec'y of State No. 38401.

[2] The term "Tribes" refers to the following Tribal nations which filed Amici Curiae Briefs related to their compacts with the State of Oklahoma: Cherokee Nation, Chickasaw Nation, and Choctaw Nation.

[3] Tobacco Tax Compact Between The State of Oklahoma And The Chickasaw Nation, Chickasaw Nat.-Okla., Oct. 31, 2013; Okla. Sec'y of State No. 46549; Tobacco Tax Compact Between The State Of Oklahoma And The Choctaw Nation Of Oklahoma, Choctaw Nat.-Okla., Nov. 4, 2013; Okla. Sec'y of State No. 46555.

[4] Motor Vehicle Licensing Compact Between The Cherokee Nation And The State Of Oklahoma For Lands Located Within The Compact Jurisdictional Area Of The Cherokee Nation, Cherokee Nat.-Okla., Aug. 16, 2013, Okla. Sec'y of State No. 46370; Motor Vehicle Licensing Compact Between The Cherokee Nation And The State Of Oklahoma For Lands Located Outside The Compact Jurisdictional Area Of The Cherokee Nation, Cherokee Nat.-Okla., Aug. 16, 2013, Okla. Sec'y of State No. 46371.

[5] S. Journal, 59th Legis., 1st Extra. Sess. (May 17, 2023); H.R. Journal, 59th Legis., 1st Extra. Sess. (May 17, 2023).

[6] Id.

[7] S.B. 26x, 59th Leg., 1st Extra. Sess. (May 17, 2023); 68 O.S. § 346.1.

[8] H.B. 1005x, 59th Leg., 1st Extra. Sess. (May 17, 2023); 74 O.S. § 1221.B.

[9] H.R. Journal, 59th Leg., 1st Extra. Sess. (July 31, 2023); S. Journal, 59th Leg., 1st Extra. Sess. (July 31, 2023).

[10] See, Okla. Const. art. V, § 26; Okla. Const. art. V, § 27A; Okla. Const. art. V, § 34; Okla. Const. art. V, § 35; Okla. Const. art. X, § 23(1).

[11] Okla. Const. art. V, § 27A(1) states that "[t]he Legislature may be called into special session by a written call for such purposes as may be specifically set out in the call, signed by two-thirds (2/3) of the members of the Senate and two-thirds (2/3) of the members of the House of Representatives when it is filed with the President Pro Tempore of the Senate and the Speaker of the House of Representatives who shall issue jointly an order for the convening of the special session."

[12] Pet'r's Br. in Supp. Of Appl. To Assume Original Juris. And Pet. For Declaratory Relief. 6-7.

[13] S. Journal, 59th Legis., 1st Extra. Sess. (May 17, 2023); H.R. Journal, 59th Legis., 1st Extra. Sess. (May 17, 2023).

[14] S.B. 26x Summary, 59th Legis., 1st Extra. Sess. (May 23, 2023) states:

Fiscal Analysis 

This measure allows for the extension of Tribal Compacts Tobacco Product Sales Tax. Keeping a compact sharing sales tax on tobacco products allows the state to continue receiving revenues it relies on for the state budget. Without the continuation of these compacts, there would be a decrease in state revenues, affecting the state budget.

H.B. 1005x Summary, 59th Legis., 1st Extra. Sess. (May 24, 2023) states:

Fiscal Analysis 

This measure allows for the extension of tribal impacts on Motor Vehicle Licensing and Registration. Continuing these compacts allows for continued revenue sources for the state to help address and maintain roads, bridges, schools, and other infrastructure. Without the continuation of such compacts, there would be a negative affect on the state budget due to loss of revenue.

[15] S.B. 26x Summary, 59th Legis., 1st Extra. Sess. (May 23, 2023); H.B. 1005x Summary, 59th Legis., 1st Extra. Sess. (May 24, 2023).

[16] We recognize that "[w]here a word or phrase is absent from a statute, we presume that its absence is intentional." In re 2005 Tax Assessment of Real Property Owned by BMI Construction Co., L.L.C., 2008 OK 7, ¶ 13, 187 P.3d 196, 201. In light of this legal doctrine, we note that 68 O.S. § 346(C) authorizes the Governor to 'enter into' State-Tribal compacts whereas 74 O.S. § 1221(C)(1) authorizes the Governor to both 'negotiate and 'enter into' State-Tribal compacts. As this issue was not raised in the briefs by either party, we do not address it.

[17] Our jurisprudence adopts the generalia specialibus non derogant canon. A specific prohibition will prevail even if it contradicts a grant of general permission. Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 183 (2012).

 

 

KUEHN, J., CONCURRING IN PART AND DISSENTING IN PART:

¶1 I concur with Parts I and II of the Majority Opinion. But I disagree with the Majority's approval, in Part III, of legislative meddling in a valid, ongoing delegation of authority. While the Legislature is free to repeal any authority it has granted to the Governor, see Ho v. Tulsa Spine & Specialty Hospital LLC, 2021 OK 68, ¶ 20, 507 P.3d 673, 679, I find no basis for concluding that it may tinker with that authority while it is still in the Governor's hands.

¶2 The "separation of powers" doctrine, apportioning power across the legislature, the judiciary, and the executive, is fundamental to the structure of our federal government, and to Oklahoma's state government as well. Okla.Const. Art. 4, § 1. "Given, then, the importance of separating the several departments, restricting them to their appointed powers, it follows as a logical corollary that each should be kept independent in the sense that the acts of each shall never be controlled by or subjected directly or indirectly to the coercive influences of either of the other departments." State ex rel. York v. Turpen, 1984 OK 26, ¶ 10, 681 P.2d 763, 767. With regard to legislative power, a common concern is whether, and to what extent, the legislature may delegate authority to another branch. But equally important is to what extent the legislature may interfere with authority once it has been delegated.

¶3 In Springer v. Philippine Islands, 277 U.S. 189 (1928), the United States Supreme Court considered Acts of the Philippine Legislature which authorized a committee of three -- two legislators and one executive -- to vote corporate stock owned by the Philippine Government. Because the statutes authorized two legislators to perform the executive function of controlling the management of government-owned corporations, the Court found that they violated the separation-of-powers doctrine.

¶4 In Bowsher v. Synar, 478 U.S. 714 (1986), the Supreme Court considered an Act designed to eliminate the federal budget deficit. If the deficit exceeded a certain amount, the Act required cuts in federal spending. Necessary calculations were submitted to the Comptroller General, who submitted a report to the President, who then mandated the spending cuts specified by the Comptroller. This scheme gave the Comptroller -- in effect, an agent of Congress -- ultimate authority to determine the budget cuts to be made. Id. at 733. The Court concluded that the act violated the separation-of-powers doctrine and was unconstitutional. "By placing the responsibility for execution of the [Act] in the hands of an officer who is subject to removal only by itself, Congress in effect [] retained control over the execution of the Act and has intruded into the executive function." Id. at 734.

¶5 In Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc., 501 U.S. 252 (1991), the Supreme Court reviewed a federal law authorizing the transfer of control of two airports from the federal government to a local authority, conditioned upon the creation of a review board by the local authority. The board, which was composed of nine congressmen, could veto decisions of the local authority. The Court concluded that conditioning the transfer upon the creation of the review board was an "impermissible encroachment" on the executive branch and violated the separation-of-powers doctrine. Id. at 277. Under this doctrine, the legislature "may not invest itself or its Members with either executive power or judicial power." Id. at 274 (quotation omitted).

¶6 Returning to the present case, Section 346 of Title 68 (governing the sale and taxation of tobacco products on tribal land) authorizes the Governor to "enter into" such compacts on the State's behalf. Similarly, Section 1221 of Title 74 authorizes the Governor to "negotiate and enter into" cooperative agreements between the State and Tribes. I agree with the Majority that "any delegated authority to the Governor is subject to limitation by the Legislature who retains the power to change the underlying law to limit that authority." Majority at ¶ 28. But that isn't what the Legislature did in the 2023 Special Session. The Governor's authority to negotiate these compacts with the Tribes remains. The Majority concedes this. Majority at ¶ 29 ("The later enacted bills do not preclude or prevent the Governor from exercising the authority granted to him by 68 O.S. § 346 and 74 O.S. § 1221"). The separation-of-powers doctrine demands that once the Legislature "makes its choice in enacting legislation, its participation ends." Bowsher, 478 U.S. at 733. In my view, the Legislature may delegate negotiating authority to the Governor, and it may remove that authority. But it may not micro-manage the Governor's execution of the authority delegated to him.

¶7 The micro-management going on here undermines the very purpose of giving the Governor deal-making authority in the first place. The Majority interprets the laws enacted in the Special Session as just buying the parties more time to negotiate. Majority at ¶¶ 28-31. But that goes to the heart of the negotiation process. The Legislature appointed the Governor, not to go on a fact-finding mission or act as a policy messenger, but to make deals with the Tribes. What is to prevent the Legislature from extending the previous compacts again, and again, indefinitely? When one party believes the other has no real authority to make deals, the latter's bargaining power is nullified. Through the later-enacted provisions, the Legislature has effectively nullified the Governor's authority without actually saying so.

¶8 Finally, the Majority characterizes the later-enacted laws as more specific, and thus controlling over what it views as more general legislation delegating negotiating authority to the Governor. Majority at ¶ 30. I cannot agree. The issue is not which of two legitimately enacted statutes should control. Rather, the issue is whether later-enacted statutes are legitimate enactments at all. I believe they aren't, for one precise reason: because they violate the separation-of-powers doctrine and are therefore unconstitutional.

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
2013 OK AG 8, 
Question Submitted by: The Honorable Mike Reynolds, State Representative, District 91
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1947 OK 53, 180 P.2d 631, 198 Okla. 565, 
TEXAS CO. v. STATE ex rel. CORYELL
Discussed

 
1953 OK 159, 257 P.2d 802, 208 Okla 514, 
DOBBS v. BOARD OF COUNTY COM'RS OF OKLAHOMA COUNTY
Discussed

 
1945 OK 254, 165 P.2d 358, 196 Okla. 339, 
WELLS v. CHILDERS
Discussed

 
1961 OK 136, 362 P.2d 670, 
TATE v. LOGAN
Discussed

 
1966 OK 116, 418 P.2d 639, 
SANCHEZ v. MELVIN
Discussed

 
2008 OK 7, 187 P.3d 196, 
IN THE MATTER OF THE 2005 TAX ASSESSMENT OF REAL PROPERTY
Discussed

 
2008 OK 65, 188 P.3d 177, 
GLASCO v. STATE ex rel. OKLAHOMA DEPARTMENT OF CORRECTIONS
Discussed

 
2009 OK 51, 230 P.3d 488, 
GRIFFITH v. CHOCTAW CASINO OF POCOLA
Discussed

 
1980 OK 36, 608 P.2d 1139, 
City of Sand Springs v. Department of Public Welfare
Discussed

 
2015 OK 58, 378 P.3d 54, 
EDWARDS v. BOARD OF COUNTY COMMISSIONERS
Discussed

 
2016 OK 120, 386 P.3d 628, 
MULTIPLE INJURY TRUST FUND v. COBURN; MULTIPLE INJURY TRUST FUND v. STURDIVANT; MULTIPLE INJURY TRUST FUND v. CROSSLIN; MULTIPLE INJURY TRUST FUND v. WILLIAMS
Discussed

 
2018 OK 54, 435 P.3d 90, 
COMPSOURCE MUTUAL INSUR. CO. v. STATE ex rel. OKLA. TAX COMM. and OKLA. ASSOC. OF ELECTRIC SELF INSURERS FUND v. STATE OF OKLA. TAX COMM.
Discussed

 
2020 OK 64, 473 P.3d 43, 
TREAT v. STITT
Discussed

 
2021 OK 3, 481 P.3d 240, 
TREAT v. STITT
Discussed

 
2021 OK 68, 507 P.3d 673, 
HO v. TULSA SPINE & SPECIALTY HOSPITAL
Discussed at Length

 
2022 OK 73, 520 P.3d 370, 
RITTER v. STATE
Discussed

 
1981 OK 70, 635 P.2d 1010, 
Way v. Grand Lake Ass'n, Inc.
Discussed

 
1927 OK 453, 263 P. 635, 128 Okla. 269, 
SIMPSON v. HILL
Discussed

 
1984 OK 26, 681 P.2d 763, 55 OBJ 1013, 
State ex rel. York v. Turpen
Discussed

Title 68. Revenue and Taxation

 
Cite
Name
Level

 
68 O.S. 346.1, 
Tribal-State Agreements
Discussed at Length

 
68 O.S. 346, 
Legislative Findings - Intent - Authority of Governor - Terms and Conditions of Sales in Indian Country
Discussed at Length

Title 74. State Government

 
Cite
Name
Level

 
74 O.S. 1221, 
Unique Status of Indian Tribes within Federal Government
Discussed at Length

 
74 O.S. 1221.B, 
Tribal-State Agreements
Discussed at Length

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA